*Suffolk Superior Civil # 05-1674*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ATLAS GARDEN SUPPLY, LLC,

           Plaintiff,

vs.

INTRUDER, INC., AMES TRUE TEMPER
COMPANY AND HARRY S. BILLADO

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

*U.S. DIST. #*

*05-CV-11122 JLT*

Civil Action No. _____

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT

To:    Civil Clerk's Office, United States District Court for the District of Massachusetts, United States District Court, District of Massachusetts, U.S. Courthouse, One Courthouse Way, Boston, Massachusetts 02210

       Clerk's Office, Suffolk County Courthouse, 12th Floor, Three Pemberton Square, Boston, Massachusetts, 02108

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §1441 and 1446 the defendant, Harry Billado, by and through its attorneys, Devine, Millimet & Branch, Professional Association, hereby removes this civil action from the Suffolk County Superior Court to the United States District Court for the District of Massachusetts upon the following grounds:

1.    This is an action by plaintiff Atlas Garden Supply, LLC, a Massachusetts limited liability company, in which a variety of common law claims, federal claims and state statutory claims have been asserted against three defendants.

2.    None of the defendants is a citizen of Massachusetts within the meaning of 28 U.S.C. § 1332(a)(1). See Complaint at ¶¶5, 6 and 7.

3.     Although the Complaint does not specify the amount of damages sought, plaintiff seeks to recover actual damages, "multiple damages" and attorneys' fees and, upon information and belief, the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000 within the meaning of 28 U.S.C. §1332(a).

4.     This Court has jurisdiction by virtue of diversity of citizenship and removal is thus proper pursuant to 28 U.S.C. §1441(a).

5.     The Complaint also raises claims which give rise to federal question jurisdiction within the meaning of 28 U.S.C. §1331.  See, e.g., Complaint at ¶¶ 62-65 (Lanham Act) and see, generally, allegations in Complaint alleging ownership of improvements to a patented device. Removal is proper pursuant to 28 U.S.C. §1441(a) for this reason, as well.

6.     Removal is timely within the meaning of 28 U.S.C. §1446(b) in that defendants received their copies of the initial pleadings setting forth the causes of action herein during the period May 2 through May 5, 2005.

7.     The plaintiffs commenced this action in the Suffolk County Superior Court.  The District of Massachusetts constitutes "the district and division embracing" the court in which this matter is currently pending.  See 28 U.S.C. §1441(a).  Accordingly, venue is proper in this Court.

8.     Undersigned counsel certified that each of the defendants has consented to the removal of this action.

9.     Copies of the Summons, Complaint and Civil Action Cover Sheet, constituting all process pleadings and orders served upon the defendant within the meaning of 28 U.S.C. §1446(a), are annexed hereto as Exhibit A.

2

**WHEREFORE,** Mr. Billado respectfully requests this Honorable Court to:

A.     Exercise its jurisdiction over the claims asserted by the plaintiffs herein;

B.     Grant such other and further relief as may be just and proper.

Respectfully submitted,

**HARRY S. BILLADO**

By his attorneys,

**DEVINE, MILLIMET & BRANCH,**
**PROFESSIONAL ASSOCIATION**

Date: 5/31/05

Steven E. Grill, Esquire
Timothy Bray, Esquire (BBO #652398 )
111 Amherst Street
Manchester, NH 03101
Telephone: (603) 669-1000
e-mail: sgrill@devinemillimet.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served via United States mail, first class, postage prepaid on this date upon David A. Brown, Esquire, Intruder, Inc. and Ames True Temper Company.

Date: 5/31/05

Steven E. Grill, Esquire

3

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. SUCV2005-01674

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
ATLAS GARDEN SUPPLY, LLC,
                                        :
            Plaintiff,
                                        :
    vs.
                                        :
INTRUDER, INC., AMES TRUE TEMPER
COMPANY AND HARRY S. BILLADO            :

            Defendant.                  :

                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF CASE HAVING BEEN REMOVED

TO THE HONORABLE JUDGE AND ADMINISTRATOR OF THIS COURT:

Harry S. Billado, named defendant in this action, file this Notice of Case Having Been

Removed. Attached hereto is a true and correct copy of the Notice of Removal filed in the

United States District Court for the District of Massachusetts, the filing of which effected the

removal of this action.

Respectfully submitted,

**HARRY S. BILLADO**

By his attorneys,

**DEVINE, MILLIMET & BRANCH,
PROFESSIONAL ASSOCIATION**

Date: ___5/31/05___

Steven E. Grill, Esquire
Timothy Bray, Esquire (BBO #652398 )
111 Amherst Street
Manchester, NH 03101
Telephone: (603) 669-1000
e-mail: sgrill@devinemillimet.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served via United States mail, first class, postage prepaid on this date upon David A. Brown, Esquire, Intruder, Inc. and Ames True Temper Company.

Date: ___5/31/05___

Steven E. Grill, Esquire

J:\wdox\docs\clients\16430\74011\M0724507.DOC

2

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## SUCV2005-01674
## Atlas Garden Supply LLC v Intruder Inc et al

| **File Date** | 04/28/2005 | **Status** | Disposed: transfered to other court (dtrans) |
|---|---|---|---|
| **Status Date** | 05/31/2005 | **Session** | BLS - CtRm 1309, 3 Pemberton Square, Boston |
| **Origin** | 1 | **Case Type** | BE1 - Fraud, business torts, etc |
| **Lead Case** | | **Track** | B |

| **Service** | | **Answer** | | **Rule12/19/20** | |
|---|---|---|---|---|---|
| **Rule 15** | | **Discovery** | | **Rule 56** | |
| **Final PTC** | | **Disposition** | | **Jury Trial** | Yes |

**PARTIES**

**Plaintiff**
Atlas Garden Supply LLC
Active 04/28/2005

**Private Counsel 556161**
David A Brown
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
Phone: 617-646-2000
Fax: 617-646-2222
Active 04/28/2005 Notify

**Defendant**
Intruder Inc
Service pending 04/28/2005

**Defendant**
Ames True Temper Company
Service pending 04/28/2005

**Defendant**
Harry S Billado
Service pending 04/28/2005

**Private Counsel 652398**
Timothy E Bray
Devine Millimet & Branch
300 Brickstone Square
PO Box 39
Andover, MA 01810
Phone: 978-475-9100
Fax: 978-470-0618
Active 05/31/2005 Notify

MAS-20030912                    Case 1:05-cv-11122-JLT   Document 3   Filed 06/06/2005   Page 7 of 25
güen                            **Commonwealth of Massachusetts**                                        06/01/2005
                                    **SUFFOLK SUPERIOR COURT**                                        02:49 PM
                                          **Case Summary**
                                          **Civil Docket**

## SUCV2005-01674
### Atlas Garden Supply LLC v Intruder Inc et al

**Defendant**
Steven E. Grill
111 Amherst Street
Manchester, NH 03101
Phone: 603-669-1000
Service pending 06/01/2005

**ENTRIES**

| Date | Paper | Text |
|---|---|---|
| 04/28/2005 | 1.0 | Complaint (Business) filed with request for trial by jury |
| 04/28/2005 | | Origin 1, Type BE1, Track B. |
| 04/28/2005 | 2.0 | Civil action cover sheet filed |
| 05/03/2005 | 3.0 | Notice of Acceptance Into Business Litigation Session: (Allan vanGestel, Justice) Notice sent 5/03/05 |
| 05/31/2005 | | Copy of petition for removal to U. S. Dist. Corut of Deft. Harry S. Billado U. S. Dist.#(05-CV-11122-JLT) |
| 05/31/2005 | | Case REMOVED this date to US District Court of Massachusetts |

**EVENTS**

I HEREBY ATTEST AND CERTIFY ON

JUNE 2, 2005 , THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT CLERK.

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss**

**SUPERIOR COURT DEPARTMENT**
**CIVIL ACTION NO.**

05-1678-

| | |
|---|---|
| **Thomas Dehner and** | ) |
| **Carol Mallory,** | ) |
| **Plaintiffs** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **Angel Anthony Guadalupe and** | ) |
| **Debra Shopteese,** | ) |
| **Defendants** | ) |
| | ) |

**VERIFIED COMPLAINT FOR**
**SPECIFIC PERFORMANCE**

### INTRODUCTION

This is an action for specific performance, declaratory relief and, in the alternative, for damages arising out of a breach of an agreement for the purchase and sale of real estate. The defendants accepted the plaintiffs' offer to purchase and the deposits paid by the plaintiffs, thereby creating a binding obligation to sell the subject real estate. The defendants' refusal to sign a purchase and sale agreement and convey the subject real estate to the plaintiffs is a breach of contract, entitling the plaintiffs to specific performance of the offer to purchase. In the event that the Court does not order specific performance, plaintiffs are entitled to damages.

### JURISDICTION AND VENUE

1.  Jurisdiction is conferred upon this Court pursuant to M.G.L. c. 212, § 4.

2.  Venue in this action properly lies in this Court pursuant to Mass. Gen. L. c. 223, §§ 1 & 8.

### PARTIES

3.  Plaintiff Thomas Dehner is an adult resident of the Commonwealth of Massachusetts who resides at 11 Sunnyside Street, Boston, SUFFOLK COUNTY, Massachusetts 02130.

4. Plaintiff Carol Mallory is an adult resident of the Commonwealth of Massachusetts who resides at 11 Sunnyside Street, Boston, SUFFOLK COUNTY, Massachusetts 02130.

5. Defendant Angel Anthony Guadalupe is an adult resident of the Commonwealth of Massachusetts who resides at 53 Louder's Lane, Boston, SUFFOLK COUNTY, Massachusetts, 02130.

6. Defendant Debra Shopteese is an adult resident of the Commonwealth of Massachusetts who resides at 53 Louder's Lane, Boston, SUFFOLK COUNTY, Massachusetts, 02130.

## STATEMENT OF FACTS

7. Defendants, Angel Anthony Guadalupe and Debra Shopteese (collectively, the "Defendants"), are owners of certain real estate located at 55 Louder's Lane, located in the Jamaica Plain section of Boston, Massachusetts, containing approximately 14,000 square feet of land more of less (the "Property"). Defendants' title to the Property is derived from a deed, dated September 15, 2004, recorded with the Suffolk County Registry of Deeds at Book 35514, Page 328 (the "Deed"). A true and accurate copy of the Owner's Deed is attached hereto as Exhibit A.

8. The Property is immediately adjacent to the Defendants' primary residence at 53 Louder's Lane, and shares a common plot line.

9. On March 19, 2005, Plaintiffs were shown the Property by Defendant Shopteese. At that time, Defendant Shopteese represented to the Plaintiffs that Defendants intended to relocate the common plot line between the Property and their own lot by moving the plot line between the parcels four feet to the west, thereby decreasing the size of the Property.

10. On information and belief, by so moving the plot line, Defendants' own parcel would then have sufficient frontage to allow for further subdivision into two buildable lots.

11. Plaintiffs saw the property several more times, and had several additional conversations with Defendant Shopteese prior to making an offer on the property. In each of these conversations Defendant Shopteese represented that the Defendants were planning on moving the property line westerly by four, or at most four and a half, feet.

12. On March 30, 2005 Plaintiffs executed a standard Offer to Purchase Real Estate Form for the property (the "Offer to Purchase"). The property to be purchased was identified as 55 Louder's Lane in Jamaica Plain, and the purchase price was listed as $619,000. A true and accurate copy of the accepted Offer to Purchase is attached hereto as Exhibit B.

13. The Offer to Purchase was supported by a deposit in the amount of $1,000, a copy of which is attached hereto as Exhibit C.

14. Paragraph three (3) of the Offer to Purchase states that the parties shall execute a Standard Form Purchase and Sale Agreement on or before 5:00 pm on April 8, 2005.

15. Defendant Guadalupe signed the Offer to Purchase on March 31, 2005, thereby binding Defendants to the terms and conditions of the Offer to Purchase.

16. Prior to accepting the offer, Defendant Guadalupe added a paragraph eight (8) to the Offer to Purchase that stated "Buyer acknowledges, that prior to or at closing, seller will reconfigure lot at 55 Louder's Lane."

17. Defendant Guadalupe and Plaintiff Dehner agreed at that time that the details would be formalized in the Purchase and Sale Agreement.

18. After an inspection on the property the parties agreed to a new purchase price of $615,500, and agreed upon the date of April 11, 2005 for the Purchase and Sale Agreement to be signed.

19. On several occasions the Plaintiffs requested a copy of Defendants' draft Purchase and Sale, and the Defendants responded that it would be forthcoming shortly.

20. On April 12, 2005, Defendants delivered to Plaintiffs the first draft of a proposed Purchase and Sale Agreement, attached hereto as Exhibit D.

21. In discussions at or around this time, Defendant Shopteese represented that the Defendants had a copy of the revised plot plan showing the shared plot line having been moved four feet to the west, and agreed to provide a copy of said plan to the Plaintiffs.

22. On April 15, 2005, Plaintiffs provided to the Defendants a revised Purchase and Sale Agreement with proposed revisions, attached hereto as Exhibit E.

23. After orally suggesting a couple of additional changes to the Purchase and Sale Agreement, including a request to fix the liquidated damages entitled to the Defendants at $30,750, which the Plaintiffs agreed to, Defendants' counsel indicated to Plaintiffs' counsel that her clients had approved the Purchase and Sale Agreement as amended and that the only outstanding issue was the production of the plot plan, which was to be attached as an exhibit to the Purchase and Sale Agreement.

24. Defendants themselves represented directly to Plaintiffs that they were amendable to the revised Purchase and Sale Agreement and agreed that they would shortly provide Plaintiffs with the revised plot plan so that the parties could sign the Purchase and Sale Agreement.

25. In reliance on the Defendants' representations that the revised plot plan showing the shared plot line having been moved four feet to the west would be forthcoming and that they had agreed to the terms of the Purchase and Sale Agreement, Plaintiffs undertook certain expenses necessary to proceed with the purchase of the Property and for the sale of their own primary residence.

26. Defendants never responded in writing to Plaintiffs' suggested revisions to the Purchase and Sale Agreement.

27. Defendants never produced a copy of the revised plot plan.

28. On April 21, 2005, Defendants' counsel sent Plaintiffs' counsel a letter stating that the Defendants considered the proposed transaction "no longer viable" and would therefore return Plaintiffs' deposit check. A copy of this letter is attached hereto as Exhibit F.

29. Plaintiffs are willing and able to purchase the property.

30. Plaintiffs were willing and able to sign the Purchase and Sale Agreement, as revised, and were waiting solely for the production of the revised plot plan showing the shared plot line having been moved four feet to the west as represented by the Defendants to the Plaintiffs.

31. Defendants' refusal to perform their obligation under the Offer to Purchase to sign the Purchase and Sale Agreement and to convey the Property to Plaintiffs constitutes breach of contract.

32. Plaintiffs are entitled to specific performance of the Offer to Purchase and the Purchase and Sale Agreement.

## COUNT I

## BREACH OF CONTRACT

33. Plaintiffs reallege the facts set forth in paragraphs 1 through 32 above, and incorporate them by reference as duly set forth herein.

34. The Offer to Purchase signed by the parties was a legally binding contract obligating the Defendants to execute the Purchase and Sale Agreement and convey the Property to the Plaintiffs.

35. The Defendants breached said contract when they notified the Plaintiffs of their intent not to fulfill their obligations under the contract.

36. As real property is unique, and monetary damages are inadequate to redress the breach of contract, Plaintiffs have a right to specific performance of the terms of the contract.

## COUNT II

## DECLARATORY JUDGMENT

37. Plaintiffs reallege the facts set forth in paragraphs 1 through 32 above, and incorporate them by reference as duly set forth herein.

38. There currently exists an actual controversy between Plaintiffs and Defendants concerning the parties' right and obligations under the Offer to Purchase and the Purchase and Sale Agreement.

39. Declaratory relief is needed to determine the parties' rights and obligations with respect to the Offer to Purchase and the Purchase and Sale Agreement, and relief pursuant to M.G.L. c. 231A is needed to give effect to the rights and obligations so declared.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests the following relief:

1.    That the Court enter judgment for Plaintiffs on Count I and order specific performance of the Offer to Purchase and the Purchase and Sale Agreement, compelling Defendants to produce a copy of a revised plot plan showing the shared plot line having been moved four feet to the west as represented by the Defendants to the Plaintiffs, sign the Purchase and Sale Agreement and convey the Property to Plaintiff as provided in the Purchase and Sale Agreement;

2.    Alternatively, that the Court enter judgment for Plaintiffs on Count I and award damages

resulting from Defendants' breach of contract, including interest and costs;

3.    Declaratory judgment against Defendants on Count II and a declaration of the Court that

Defendants are obligated under the Offer to Purchase to sign the Purchase and Sale

Agreement and convey the Property to Plaintiffs and, in the alternative, to pay damages to

Plaintiffs resulting from Defendants' breach of contract;

4.    That the Court award such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a jury trial as to all issues triable by a jury.

## VERIFICATION

I hereby attest under the pains and penalties of perjury that I have read the foregoing

complaint and the facts stated therein are true based upon my own personal knowledge, except

where otherwise indicated, and no material facts have been omitted therefrom.

**I HEREBY ATTEST AND CERTIFY ON**
JUNE 2, 2005 , THAT THE
**FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.**

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:

ASSISTANT CLERK.

Respectfully submitted,
Thomas Dehner
Carol Mallory
By their attorney,

Adam Rogoff, Esq.
BBO # 634093
31 Conway Street
Roslindale, MA 02131
(617) 469-2504

Dated: April 29, 2005

VAN DAM
220 BOYLSTON
CHESTNUT HILL

237

SUFFOLK REGISTRY
RECO'D/ENTD & EXAM/TICED

DEED

2004 SEP 21  AM 10: 40

WE, MARK A. LASCOLA and ELIZABETH KASS, of Jamaica Plain, Suffolk County, Massachusetts,

*[signature] Francis M. Roache*
REGISTER OF DEEDS

for consideration paid and in full consideration of Six Hundred Ten Thousand ($610,000.00) and 100 Dollars,

grant to: DEBRA SHOPTEESE and ANGEL A. GUADALUPE,    of 55 Louders Lane, Jamaica Plain, Suffolk County, Massachusetts, *Husband + Wife as tenants by the entirety*

WITH QUITCLAIM COVENANTS:

The land in that part of Boston known as Jamaica Plain, with buildings thereon, bounded and described as follows:

SOUTHERLY        by Louders Lane One Hundred and Two (102.00) feet;

EASTERLY         by land of Ernest J. and Gladys Stahl One Hundred
                 forty-five and twenty hundredths (145.20) feet;

NORTHERLY        by land of Julius Kosedy Ninety-three (93.00) feet;

NORTHEASTERLY  by Mossbank Footway Nine (9.00) feet;

WESTERLY         by land of Robert and Dorothy L. Ulin One Hundred
                 thirty-six and Twenty-three hundredths (136.23) feet.

Being the same premises shown on a plan entitled "Land in Jamaica Plain, Mass. Belonging to Thomas P. Varley" dated June 19, 1944 by Donald J. Reardon, Surveyor, recorded with Suffolk Deeds in Book 6102, Page 319, however otherwise the same may be bounded or described.

For our title see deed of James V. Parziale and Maureen R. Parziale, dated March 15, 1993, and recorded with Suffolk County Registry of Deeds at Book 18096, Page 93.

*[left margin, vertical text]* 55 LOUDERS LANE, JAMAICA PLAIN



09/21/2004 Doc: 0237

Executed as a sealed instrument this /5^ day of September, 2004.

MARK A. LASCOLA

ELIZABETH KASS

## COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.

On this /5^ day of September, 2004, before me, the undersigned notary public, personally appeared MARK A. LASCOLA and ELIZABETH KASS, proved to me through satisfactory evidence of identification, which was Mass, drivers license to be the person whose name is signed on the preceding or attached document, and acknowledged to me that they signed it voluntarily for its stated purpose.

Notary Public: Frances M. Avrin
My Commission Expires: 11/12/05

BOSTON
DEEDS REG 19
SUFFOLK·
CANCELLED
09/21/04 10:37AM /    01
000000,H9745    /
FEE    ·$2781.60
CASH    $2781.60

FRANCES M. AVRIN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
November 12, 2005

## OFFER TO PURCHASE REAL ESTATE

Date: 3/30/05

To: _Deborah Slepterse - Angel Anthny Gudelipe_

(Seller and Spouse)

The property herein referred to is identified as follows: _55 Cordes Lane_

_JP, MA_

I hereby offer to buy said property under the following terms and conditions:

1. I will pay therefore $ _619,000_ , of which

   (a) $ _1,000_ is paid herewith as a deposit to bind this offer
   (b) $ _5,000_ is paid as an additional deposit upon the execution of the Purchase and Sale Agreement provided for below
   (c) $ _613,000_ is to be paid at the time of delivery of the Deed in cash, or by certified, cashier's, treasurer's or bank checks.
   (d) $ _____
   (e) $ _619,000_ Total Purchase Price

2. This Officer is good until ~~5:00pm~~ on _3/31/05_ at or before which time a copy hereof shall be signed by you, the Seller and your husband, signifying acceptance of this Offer, and returned to me forthwith, otherwise this Offer shall be considered as rejected and the money deposited herewith shall be returned to the forthwith.

3. The parties hereto shall, on or before _5:00pm_ on _4/8/05_ execute the applicable Standard Form Purchase and Sale Agreement recommended by the Greater Boston Real Estate Board or any form substantially similar thereto, which, when executed, shall be the agreement between the parties hereto.

4. A good and sufficient Deed, conveying a good and clear record and marketable title shall be delivered at 12:00 Noon on _5/2/05_ at the appropriate Registry of Deeds, unless some other time and place are mutually agreed upon in writing.

5. If I do not fulfill my obligations under this Offer, the above mentioned deposit shall forthwith become your property, without recourse to either party. Said deposit shall be held by _Deborah Slepterse_ as escrow agent subject to the terms hereof provided however that in the event of any disagreement between

the parties the escrow agent may retain said deposit pending instructions mutually given in writing by the parties. A similar provision shall be included in the Purchase and Sale Agreement with respect to any deposit held under its terms.

6. Time is of the essence hereof.

7. The initialed riders, if any, attached hereto are incorporated herein by reference.

**\*  8.**

WITNESS my hand and seal

SIGNED _____

Buyer

_____

Buyer

Address _____    Phone _____

This Offer is hereby accepted upon the foregoing terms and conditions at

_____ on _3/3 1/2 00 5_____.

WITNESS my (our) hand(s) and seal(s)

_____    Seller

Seller (or spouse)

**\* Buyer Acknowleges, that prior to or at closing, Seller will reconfigure lot at 55 London's Lane.**    *A. M*

## INSPECTION CONTINGENCY ADDENDUM (including Radon)

The BUYER may, at the BUYER's own expense and on or before $\frac{4/6/e5}{}$
Have the property inspected by a duly-licensed person engaged in the business of
conducting home inspections. Such inspection may include a customary test for the
presence of radon gas. If it is the opinion of such inspector that the property contains
serious structural, mechanical or other defects, including the presence of radon gas in
excess of levels deemed acceptable by the federal Environmental Protection Ag4ency,
and if the repair of such defects would cost the BUYER in the aggregate more than
$\underline{4 \text{ } \zeta \text{.} \text{.} \text{}}$, then the BUYER shall have the option of revoking the Offer by
written notice to the Seller on or before $\underline{4/6/c5}$. Such notice shall be
accompanied by a copy of the inspector's opinion and any related reports, test results and
cost estimates. If the BUYER so elects to revoke this Offer, all deposits made by the
BUYER shall be forthwith refunded and this Offer shall become null and void without
further recourse to either party.

INITIALS: _____ Seller (or spouse)      _____ Seller

_____ Buyer      _____ Buyer

## MORTGAGE CONTINGENCY ADDENDUM

In order to help finance the acquisition of the property the BUYER shall apply for a
conventional bank or other institutional mortgage loan of $ _____ at
prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a
commitment for such loan cannot be obtained on or before _____, then the
BUYER shall have the option of revoking this Offer by written notice to the Seller prior
to the expiration of such time, whereupon all deposits made by the BUYER shall be
forthwith refunded and this Offer shall become null and void and without further recourse
to either party. In no event will the BUYER be deemed to have used diligent efforts to
obtain such commitment unless the BUYER submits a complete mortgage loan
application conforming to the foregoing provisions on or before _____.

INITIALS: _____ Seller (or spouse)      _____ Seller

_____ Buyer      _____ Buyer

CAROL R. MALLORY
THOMAS R. DEHNER
11 SUNNYSIDE ST.
JAMAICA PLAIN, MA  02130

5-13/110
0076475164

1306

DATE 3/24/05

PAY TO THE
ORDER OF _____ Deborah Shopteese _____ $ 1,000 00/100

one thousand & 00/100 _____ DOLLARS

Fleet
82633   www.fleet.com
Harvard Square Office
Cambridge, Massachusetts 02138

MEMO _____

⑈011000138⑈ 00764 75164⑈ 1306

**STANDARD FORM**                                    From the Office of:

**PURCHASE AND SALE AGREEMENT**

This      day of April, 2005.

1. PARTIES
   AND MAILING
   ADDRESSES
   *(fill in)*

A. Anthony Guadalupe and Debra Shopteese of 53 Louder's Lane, Jamaica Plain, MA hereinafter called the SELLER, agrees to SELL and Thomas Dehner and Carol Mallory of 11 Sunnyside Street, Jamaica Plain, MA

2. DESCRIPTION
   *(fill in and include
   title reference)*

hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the following described premises: the land with the improvements thereon located at 55 Louder's Lane, Jamaica Plain, Massachusetts, and being more particularly described in a deed to the Seller recorded at Suffolk          County Registry of Deeds, Book          , Page          .

3. BUILDINGS,
   STRUCTURES,
   IMPROVEMENTS,
   FIXTURES

   *(fill in or delete)*

Included in the sale as a part of said premises are the buildings, structures, and improvements now thereon, and the fixtures belonging to the SELLER and used in connection therewith including, if any, all wall to wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants, and, ONLY IF BUILT IN, refrigerator, air conditioning equipment, ventilators, dishwasher, and window treatments; and excluding dryer.

4. TITLE DEED
   *(fill in)*
   *\*Include here by specific
   reference any restric-
   tions, easements, rights
   and obligations in party
   brances, and make pro-
   vision to protect
   SELLER against
   BUYER's breach of
   SELLER's covenants
   in leases, where
   necessary.*

Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except

(a)   Provisions of existing building and zoning laws;
(b)   Existing rights and obligations in party walls which are not the subject of written
(c)   Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;
(d)   Any liens for municipal betterments assessed after the date of this agreement;
(e)   Easements, restrictions and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said premises as single family dwelling.
\*(f)

5. PLANS

If said deed refers to a plan necessary to be recorded therewith, the SELLER shall deliver such plan with the deed in form adequate for recording or registration.

6. REGISTERED
   TITLE

In addition to the foregoing, if the title to said premises is registered, said deed shall in form sufficient to entitle the BUYER to a Certificate of Title of said premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

7. PURCHASE PRICE
   *(fill in); space is
   allowed to write
   out the amounts
   if desired*

The agreed purchase price for said premises is Six Hundred Fifteen Thousand and 00/100 ($615,500.00) dollars, of which

$            .00      have been paid as a deposit this day, and
$      1,000.00      having been paid with Offer on or about March 31, 2005
$    614,500.00     are to be paid at the time of delivery of the deed ~~in cash, or~~ by certified, cashier's, treasurer's or bank check(s), or lender's attorney's IOLTA conveyancing account check, drawn on a Massachusetts banking institution (and  in the event of lender's attorney's check, at Seller's request payable directly to Seller)

$ _____
$    615,500.00     TOTAL

8. **TIME FOR PERFORMANCE; DELIVERY OF DEED** *(fill in)* **("Closing")**

of Deeds or office of Buyer's lender's (or if no lender, conveyancing) attorney, unless otherwise agreed upon in writing. It is agreed that time is of the essence of this agreement.

9. **POSSESSION and CONDITION of PREMISES.** *(attach a list of exceptions, if any)*

Full possession of said premises free of all tenants and occupants, except as herein provided, is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with the provisions of any instrument referred to in clause 4 hereof. The BUYER shall be entitled to an inspection of the premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause.

10. **EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM** *(Change period of time if desired).*

If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises do not conform with the provisions hereof, then ~~any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto, unless~~ the SELLER **shall** ~~elects to~~ use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, ~~in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder,~~ and thereupon the time for performance hereof shall be extended for a period of thirty (30) days, provided, however, that Buyer agrees to close within said time at Seller's request if such matter as causes such extension has been resolved prior to the expiration of said 30-day period. Said extension shall be conditioned upon Buyer's ability to extend Buyer's interest rate lock, if any, on the same rate and terms as originally obtained.

11. **FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc.**

If at the expiration of any ~~the~~ extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto.

12. **BUYER'S ELECTION TO ACCEPT TITLE**

The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either

    (a)    pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration, or

    (b)    if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration.

13. **ACCEPTANCE OF DEED**

The acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.

14. **USE OF MONEY TO CLEAR TITLE**

To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interest, provided that all instruments so procured are recorded simultaneously with the delivery of said deed, or within a reasonable time thereafter in accordance with conveyancing practice and custom in Eastern Massachusetts.

15. **INSURANCE** *\*Insert amount (list additional types of insurance and amounts as agreed)*

Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows:

| Type of Insurance | Amount of Coverage |
|---|---|
| (a) Fire and Extended coverage | As presently insured |

16. **ADJUSTMENTS** *(list operating expenses, if any, or attach schedule)*

~~Collected rents, mortgage interest,~~ Water and sewer use charges, ~~operating expenses (if any) according to the schedule attached hereto or set forth below,~~ and taxes for the then current fiscal year, shall be apportioned and fuel value shall be adjusted, as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed. ~~Uncollected rents for the current rental period shall be apportioned if and when collected by either party.~~

17. **ADJUSTMENT**

If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the

OF UNASSESSED
AND
ABATED TAXES

basis of the taxes assessed for the preceding fiscal year, with a reapportion made as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed.

18. BROKER's FEE
(fill in fee with
dollar amount or
percentage; also
name of Brokerage
firm(s))

A Broker's fee for professional services to the BUYER of ——————— ( ——%) percent of Purchase Price is due from the SELLER to ——————————————, the Broker herein, but only if, as and when Seller's deed to Buyer is recorded and Seller receives the full purchase price.
the Broker(s) herein, but if the SELLER pursuant to terms of clause 21 hereof retains the deposits made hereunder by the BUYER, said Broker(s) shall be entitled to receive from the SELLER an amount equal to one-half the amount so retained or an amount equal to the Broker's fee for professional services according to this contract, whichever is the lesser.

19. BROKER(S)
WARRANTY

The Broker(s) named herein ——— ——————— warrant(s) that the Broker(s) is (are) duly licensed as such by the Commonwealth of Massachusetts.

20. DEPOSIT
(fill in name)

All deposits made hereunder shall be held in escrow by Van Dam & Traini, LLP as escrow agent in an non-interest bearing IOLTA account, subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement.

21. BUYER's
DEFAULT;
DAMAGES

If the BUYER shall fail to fulfill the BUYER's agreement herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages unless within thirty days after the time for performance of this agreement or any extension hereof, the SELLER otherwise notifies the BUYER in writing and this shall be Seller's sole and exclusive remedy at law and in equity for Buyer's default hereunder.

22. RELEASE BY
HUSBAND OR
WIFE

The SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said premises.

23. BROKER AS
PARTY

The Broker(s) named herein join(s) in this agreement and become(s) a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing.

24. LIABILITY OF
TRUSTEE,
SHAREHOLDER,
BENEFICIARY, etc.

If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder.

25. WARRANTIES AND
REPRESENTATIONS
(fill in); if none,
state "none"; if
any listed, indicate
by whom each war-
ranty or represen-
tation was made

The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by the SELLER: None

26. MORTGAGE
CONTINGENCY
CLAUSE
(omit if not
provided for
in Offer to
Purchase)

In order to help finance the acquisition of said premises, the BUYER shall apply for a conventional bank or other institutional mortgage loan of no more than $ 613,000, at prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a written commitment for such loan cannot be obtained on or before April 20, 2005, the BUYER may terminate this agreement by written notice to the SELLER prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage loan application conforming to the foregoing provisions on or before April 9, 2005. Buyer shall be required to submit one mortgage loan application, conforming to the provisions hereof, to satisfy Buyer's obligation to exercise diligent efforts hereunder.

27. CONSTRUCTION

This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take

the entire contract between the parties, supersedes all prior agreements and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER, their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it.

28. LEAD PAINT LAW    The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age.

29. SMOKE          The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city
DETECTORS       or town in which said premises are located stating that said premises have been equipped with approved smoke detectors in conformity with applicable law.

30. ADDITIONAL     The initialed Rider A, attached hereto, are incorporated herein by reference.
PROVISIONS


FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

NOTICE:    This is a legal document that creates binding obligations. If not understood, consult an attorney.


SELLER – A. Anthony Guadalupe                    SELLER – Debra Shopteese


BUYER – Thomas Dehner                            BUYER – Carol Mallory


EXTENSION

Date_____
The time for the performance of the foregoing agreement is extended until _____ o'clock
_____. M. on the _____ day of _____, 20____, time still being of
the essence of this agreement as extended. In all other respects, this agreement is hereby ratified and confirmed.

This extension, executed in multiple counterparts, is intended to take effect as a sealed instrument.


SELLER                                            SELLER


BUYER                                             BUYER


Broker(s)

RIDER

Rider to Purchase and Sale Agreement ("Agreement") dated April 8, 2005, by and between A. Anthony Guadalupe and Debra Shopteese ("Seller") and Thomas Dehner and Carol Mallory ("Buyer"), pertaining to 55 Louder's Lane, Jamaica Plain, MA (the "Premises").

35. Any notice given hereunder shall be in writing and deemed duly given when delivered, or mailed by registered or certified mail, return receipt requested, postage and registration or certification charges prepaid, addressed as follows:

(a) To Seller:      A. Anthony Guadalupe
                    Deborah Shopteese
                    53 Louder's Lane
                    Jamaica Plain, MA 02130

(b) To Buyer:       Thomas Dehner
                    Carol Mallory

                    Jamaica Plain, MA 02130

Notwithstanding the foregoing, written notice transmitted by facsimile transmission shall meet the notice requirements of this Paragraph, if countersigned by the recipient to confirm receipt. Each party agrees to so countersign upon request contained in such notice. Notice by facsimile transmission shall be deemed given as of the date and time of transmission.

36. Upon the request of the attorney for Buyer's lending institution, Seller shall execute and deliver, simultaneously with the delivery of the Deed, such documents and affidavits as are true and correct and reasonably required by said attorney with respect to such Closing, including, without limitation, with respect to (a) persons or parties in possession of the premises; (b) facts or conditions which may give rise to mechanic's or materialmen's liens; (c) the purchase price of the premises and whether the Seller has or intends to lend to the Buyer a portion thereof; (d) the absence of urea formaldehyde foam insulation on the Premises; (e) Form 1099 to be filed with the Internal Revenue Service (unless Seller completes such forms as excuse such filing); and (f) a certification that Seller is not a foreign individual or trust under IRC Section 1445 and not subject to tax withholding on the sale price.

37. Prior to the receipt of a written mortgage commitment, the Buyer shall have a reasonable right of access to the Premises for the purpose of showing the Premises to prospective mortgage lenders and their appraisers, agents or employees, duly authorized by such lender. Such right of access shall be exercised at reasonable times and after reasonable advance notice to the Seller, and shall be subject to Seller's consent, such consent not to be unreasonably withheld or delayed. Without limitation, Seller may condition such consent upon the presence of Seller or Seller's agent at the time of any such exercise of access, and the giving of reasonable advance notice to the occupants of the Premises. After expiration of Buyer's mortgage contingency, Buyer shall have a reasonable right of access to the Premises for the pre-closing inspection and

for taking of measurements, such right of access to be subject to the same terms and conditions set forth in this paragraph regarding access for showing the Premises to prospective mortgage lenders. Said access shall not exceed two separate dates.

38. Any matter which is the subject of a title or practice standard of the Real Estate Bar Association for Massachusetts at the time of the delivery of the Deed shall be governed by said title or practice standard to the extent applicable. However, the Buyer shall not be required to purchase the premises if, irrespective of such standard, title is not insurable in accordance with Paragraph 50 (c).

39. All references to the "then current year" and like references with respect to real estate taxes payable for the Premises shall be construed to mean the then-current fiscal tax period within which such taxes are payable.

40. Seller agrees to deliver the Premises to Buyer in broom-clean condition, with all personal property which is not included in this sale, and with all fixtures, appliances, equipment, mechanical systems and the grounds in substantially the same condition as at the time of Buyer's home inspection, reasonable use and wear thereof excepted. Seller shall deliver all of Seller's keys to the Premises to Buyer at closing, provided, however, that Buyer shall not occupy or begin moving into the Premises before recording of the deed without the express written consent of the Seller.

41. Seller represents that Seller has caused no urea formaldehyde foam insulation ("UFFI") to be installed in the Premises, and has no actual knowledge of the presence of UFFI upon the Premises.

42. At Closing, Seller shall use reasonable efforts to deliver to Buyer warranties and/or operational manuals, if any, then in Seller's possession which Seller may have received in connection with the mechanical systems, appliances and other equipment located upon the Premises, together with an assignment of any such warranties, if still in effect and so requested by the Buyer. Buyer acknowledges that the appliances and/or personal property included in this sale (i.e., refrigerator, stove) are in used condition and agrees that same shall be delivered at Closing in substantially the same condition as at the time of Buyer's home inspection, reasonable wear and use thereof excepted, with no warranty, express or implied, from Seller concerning the condition thereof.

43. Buyer and Seller each warrants and represents to the other that neither of them has entered into any listing agreement or broker agreement with any real estate broker pursuant to which such real estate broker would claim a commission or other fee from Buyer or Seller in this transaction, and each agrees to hold the other harmless from and indemnified against all loss, damage, claim, liability, cost and/or expense, including reasonable attorney's fees, incurred by either as a result of any claim, by and through an agreement with Seller or Buyer, against Buyer or Seller for a brokerage commission or fee on account of any such agreement. The provisions hereof shall survive delivery of the deed.

2

44. The following provision is added to Paragraph 21 (Buyer's Default, Damages): "The Buyer and Seller each hereby further agree that anticipated damages from a default by the Buyer are uncertain in amount and difficult to prove; the parties hereto wish to liquidate damages in advance as provided above in this Paragraph 21; that the amount of the deposit bears a reasonable relationship to the damages that the Seller would suffer in the event of a default by Buyer; and that the parties expressly consent to the amount of the deposit as being the acceptable measure of Seller's damages in the event of such a default by Buyer. The provisions of this Paragraph 21 shall survive delivery of the deed and may be introduced in evidence in any such action."

45. The following provisions are hereby incorporated by reference at the end of Paragraph 26 (Mortgage Contingency Clause): "If a written loan commitment obtained by Buyer on or before April 20, 2005 contains conditions that are beyond Buyer's reasonable ability to control, achieve, or satisfy prior to Closing, using due diligence, Buyer may terminate this agreement under and in accordance with this Paragraph by giving written notice to the Seller prior to the expiration of April 20, 2005, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. Notwithstanding any provision of this Paragraph 26 to the contrary, and without implying or intending that any other condition which may be set by Buyer's mortgage lender would necessarily constitute valid grounds for Buyer to terminate this Agreement under this Paragraph 26, Buyer and Seller agree that, should Buyer receive a mortgage loan commitment subject to any condition requiring, or pertaining to, the sale or leasing of any real estate then owned by Buyer, or subject to title examination of the Premises and/or closing preparations by such lender's attorney, no such condition shall constitute grounds for termination by the Buyer of this Agreement pursuant to the provisions of this Paragraph 26".

46. If any paragraph contained in this Rider conflicts in any way with the printed form of the Purchase and Sale Agreement, then the paragraph contained in this Rider shall control regarding such conflict.

47. References in this Agreement to the "Closing" or "Closing date" shall mean the date set forth in Paragraph 8 for delivery of the deed.

48. The Buyer and Seller each acknowledge that each has been afforded the opportunity to confer with legal counsel of his/her choice prior to signing this Agreement.

49. This Agreement, including this Rider, when executed by Buyer and Seller, shall supersede all prior agreements and other understandings between the parties and represents the complete and full agreement of the parties hereto except as this Agreement is modified or altered by written agreement signed by the parties hereto. All prior offers and agreements between the parties with respect to the transaction contemplated hereby and any such prior offers or agreements shall be null and void, upon execution hereof by Buyer and Seller.

50. It is understood and agreed by the parties that the premises shall not be in conformity with the provisions of the Agreement unless:

(a) All buildings, structures, improvements, including but not limited to any fences, driveways and all means of access to the premises shall be located completely within the boundary lines of said premises and shall not encroach upon or under any property not within such boundary lines;

3

(b) No building, structure, septic system,
and utility lines, if any, or improvements, and all means of access to the
premises belonging to any person or entity shall encroach upon or under
said premises;

(c) Title to the premises is insurable for the benefit of the Buyer by a title
insurance company at normal premium rates in the American Land Title
Association form currently in use, subject only to those printed exceptions
to title normally included in the jacket to such form as standard to the
exceptions set forth in paragraph 4 of this Agreement and the exceptions
noted on Seller's Title Insurance Policy attached hereto;

(d) The premises shall abut a public way duly laid out or accepted as
such by the City of Boston, Massachusetts.

51.     Sellers hereby represent, to the best of Seller's knowledge and belief, that Seller has not
entered into any written contracts, nor is there any litigation nor are there other proceedings pending
involving the premises, which will be binding upon the Buyer or affect Buyer in any manner. The
provisions of this paragraph shall survive delivery of the deed.

52.     To the best of Seller's knowledge, the premises do not contain an underground storage
tank or other subsurface facility holding petroleum or oil products currently in use or previously
abandoned. The provisions of this paragraph shall survive delivery of the deed.

53.     In the event this Agreement contains any provision that the Buyer shall accept the title of the
Seller subject to easements and restrictions of record, if any, then such acceptance of title subject to
easements and restrictions shall be limited to those of record, if any, insofar as they may be in force and
effect, which do not adversely affect the premises or the use thereof by the Buyer as a single family
residence and which (i) are acceptable to any mortgagee granting the financing for Buyer's acquisition of the
premises, (ii) comply with Federal Home Loan Mortgage Corporation and Federal National Mortgage
Association loan requirements in effect on the Closing Date, (iii) give no rights to anyone to enter upon,
cross or use any portion of the Premises, except for utility easements, (iv) have been duly satisfied of record
at or prior to the closing in the event consent(s) or approval(s) are needed, and (v) have been duly complied
with of record (without limitation, a certificate of compliance) at or prior to the closing in the event of any
order of condition or any other state, county, or municipal (or any subdivisions thereof) requirements of
record in connection with the premises.

54.     Buyer hereby acknowledges that Buyer has been permitted adequate time and full access
to the Premises for the purpose of conducting home, pest, radon, and other requested inspections of the
Premises prior to the execution by Buyer of this Agreement; and that, at Buyer's cost and employing
inspector(s) of Buyer's choice, one or more of such inspections were performed to Buyer's satisfaction.
Except as otherwise expressly provided in this Agreement, Buyer hereby agrees to take title to, and
possession of, the Premises in their "as is" condition as of the date hereof, reasonable use and wear
thereof excepted; and, without limitation, no matter identified in any report of any such inspector shall
constitute a basis for objecting to the condition of the Premises at Closing or thereafter. Buyer further
acknowledges that, in entering into and performing this agreement, Buyer relies solely upon such
inspections and inspection reports, as well as Buyer's own observations and inspections of the Premises,
and not upon any statements or representations made by the Seller, or any agent of the Seller, as to the
condition of the Premises or as to any other matter

4

affecting Buyer's decision to purchase the Premises. The provisions hereof shall survive delivery and recording of the deed.

55.     Seller has been advised of the requirements of Massachusetts General Laws, Chapter 255, Section 121 regarding the presence of Urea Formaldehyde Foam Insulation and has agreed to execute any necessary documents pursuant to Massachusetts General Laws, Chapter 167, Section 47.     Seller acknowledges that to the best of its knowledge no UFFI is located in the premises.

56.     Buyer acknowledges (i) having notice of Buyer's right to a lead paint inspection, prior to the date hereof; (ii) that Seller has disclosed to Buyer that the Premises may contain lead-based materials and lead-based materials are a health hazard to children under the age of six (6) years; and (iii) that Buyer has been provided the opportunity under, and in accordance with, applicable law to test the Premises for the presence of lead paint and lead based materials. Buyer does not desire a lead paint inspection or a lead paint inspection contingency in this Agreement and, therefore, none is provided. Seller makes no representations or warranties regarding the presence or absence of lead paint applied to, or materials containing lead in, any portion of the Premises. Buyer hereby agrees that, effective upon recording of the deed from Seller to Buyer, Buyer shall assume all responsibility for complying with all applicable laws concerning lead paint and lead-based materials in and upon the Premises, and Seller shall have no liability to Buyer, Buyer's heirs, successors and assigns, of any other person claiming by, through or under Buyer, on account of the presence of lead paint and lead-based materials in and upon the Premises. The provisions hereof shall survive delivery of the deed.

57.     Notwithstanding the foregoing, Seller hereby represents that, to the best of Seller's knowledge, no notice or communication has been received by Seller from any public authority that there exists any eminent domain proceeding, condemnation proceeding or any condition which violates any municipal, state or federal law, rule or regulation which relates to the premises and which has not heretofore been rectified. Seller will promptly advise Buyer upon learning of such communications.

58.     Seller represents that the purchase price, less any anticipated adjustments and Seller's closing costs, will be sufficient to permit complete payment of all outstanding encumbrances upon the premises or that Seller has cash on hand to pay any expected deficit.

59.     Seller represents: that Seller has not granted to any party any outstanding options or rights of first refusal to purchase the premises nor has Seller entered into any outstanding agreements (other than this Agreement) to sell, convey or rent the premises to any other party.

60.     Sellers hereby represent, to the best of Sellers' knowledge and belief, that Sellers have not entered into any written contracts, nor is there any litigation nor are there other proceedings pending involving the premises, which will be binding upon the Buyers or affect Buyers in any manner. The provisions of this paragraph shall survive delivery of the deed.

61.     To the best of Sellers' knowledge, the premises do not contain an underground storage tank or other subsurface facility holding petroleum or oil products currently in use or previously abandoned, that the premise do not contain any toxic substances, and the premises do not violate any federal, state or local laws, statutes, ordinances or regulations as to environmental matters, heath codes, and wetlands.

5

82. The Parties acknowledge that at or prior to the Closing, Seller will record a plan of the property and will reconfigure the lot lines between the Seller's property and the property being purchased. Seller shall assume all costs and fees associated with the reconfiguration.

Seller – A. Anthony Guadalupe

Buyer – Thomas Dehner

Seller – Debra Shopteese

Buyer – Carol Mallory

6

## PURCHASE AND SALE AGREEMENT

This    day of April, 2005.

1. PARTIES
   AND MAILING
   ADDRESSES
   *(fill in)*

A. Anthony Guadalupe and Debra Shopteese of 53 Louder's Lane, Jamaica Plain, MA
hereinafter called the SELLER, agrees to SELL and Thomas Dehner and Carol Mallory, husband and wife,
of                11 Sunnyside Street, Jamaica Plain, MA

2. DESCRIPTION
   *(fill in and include
   title reference)*

hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the
following described premises: the land with the improvements thereon located at 55 Louder's Lane,
Jamaica Plain, Massachusetts, and being more particularly described in a deed to the Seller recorded at
Suffolk         County Registry of Deeds, Book         , Page      .

3. BUILDINGS,
   STRUCTURES,
   IMPROVEMENTS,
   FIXTURES

   *(fill in or delete)*

Included in the sale as a part of said premises are the buildings, structures, and improvements now
thereon, and the fixtures belonging to the SELLER and used in connection therewith including, if any, all
wall to wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades,
screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating
equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters,
plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside
television antennas, fences, gates, trees, shrubs, plants, and, ONLY IF BUILT IN, refrigerator, air
conditioning equipment, ventilators, dishwasher, and window treatments; and excluding dryer
Premises shall include washer and dryer in basement..

4. TITLE DEED
   *(fill in)*
   *\*Include here by specific
   reference any restric-
   tions, easements, rights
   and obligations in party
   brances, and make pro-
   vision to protect
   SELLER against
   BUYER's breach of
   SELLER's covenants
   in leases, where
   necessary.*

Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the
nominee designated by the BUYER by written notice to the SELLER at least seven
days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear
record and marketable title thereto, free from encumbrances, except

   (a)   Provisions of existing building and zoning laws;
   (b)   Existing rights and obligations in party walls which are not the subject of written———————
   (c)   Such taxes for the then current year as are not due and payable on the date of the delivery of
         such deed;
   (d)   Any liens for municipal betterments assessed after the date of this agreement;
   (e)   Easements, restrictions and reservations of record, if any, so long as the same do not prohibit
         or materially interfere with the current use of said premises as single family dwelling.
   \*(f)

5. PLANS

6. REGISTERED
   TITLE

If said deed refers to a plan necessary to be recorded therewith, the SELLER shall deliver such plan with
the deed in form adequate for recording or registration.

In addition to the foregoing, if the title to said premises is registered, said deed shall in form sufficient to
entitle the BUYER to a Certificate of Title of said premises, and the SELLER shall deliver with said deed all
instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

7. PURCHASE PRICE
   *(fill in); space is
   allowed to write
   out the amounts
   if desired*

The agreed purchase price for said premises is Six Hundred Fifteen Thousand and 00/100 ($615,500.00)
dollars, of which

| $ | .00 | have been paid as a deposit this day, and |
|---|---|---|
| $ | 1,000.00 | having been paid with Offer on or about March 31, 2005 |
| $ | 614,500.00 | are to be paid at the time of delivery of the deed in cash, or by certified, cashier's, treasurer's or bank check(s), or lender's attorney's IOLTA conveyancing account check, drawn on a Massachusetts banking institution (and in the event of lender's attorney's check, at Seller's request payable directly to Seller which shall not be made available to Seller until after recording of the deed) |
| $ | | |
| $ | 615,500.00 | TOTAL |

8. TIME FOR
PERFORMANCE;
DELIVERY OF
DEED *(fill in)*
("Closing")

Such deed is to be delivered at 10:00 o'clock A.M. on the 2nd-9th day of May, 2005, at the Suffolk County Registry of Deeds or office of Buyer's lender's (or if no lender, conveyancing) attorney, unless otherwise agreed upon in writing. It is agreed that time is of the essence of this agreement.

9. POSSESSION and
CONDITION of
PREMISES.
*(attach a list of
exceptions, if any)*

Full possession of said premises free of all tenants and occupants, except as herein provided, is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with the provisions of any instrument referred to in clause 4 hereof. The BUYER shall be entitled to an inspection of the premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause.

10. EXTENSION TO
PERFECT TITLE
OR MAKE
PREMISES
CONFORM
*(Change period of
time if desired).*

If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises do not conform with the provisions hereof, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto, unless the SELLER **shall** elects to use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty (30) days, provided, however, that Buyer agrees to close at a mutually convenient time within said time 30-day period at Seller's request if such matter as causes such extension has been resolved prior to the expiration of said 30-day period. Said extension shall be conditioned upon Buyer's ability to extend Buyer's interest rate lock, if any, on the same rate and terms as originally obtained.

11. FAILURE TO
PERFECT TITLE
OR MAKE
PREMISES
CONFORM, etc.

If at the expiration of any the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto.

12. BUYER'S
ELECTION TO
ACCEPT TITLE

The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either
  (a)  pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration, or
  (b)  if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration.

13. ACCEPTANCE
OF DEED

The acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.

14. USE OF
MONEY TO
CLEAR TITLE

To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interest, provided that all instruments so procured are recorded simultaneously with the delivery of said deed, or within a reasonable time thereafter in accordance with conveyancing practice and custom in Eastern Massachusetts.

15. INSURANCE
*Insert amount
(list additional
types of insurance
and amounts as
agreed)*

Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows:

| Type of Insurance | Amount of Coverage |
|---|---|
| (a) Fire and Extended coverage | As presently insured |

16. ADJUSTMENTS
*(list operating ex-
penses, if any, or
attach schedule)*

Collected rents, mortgage interest, Water and sewer use charges, operating expenses (if any) according to the schedule attached hereto or set forth below, and taxes for the then current fiscal year, shall be apportioned and fuel value shall be adjusted, as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed. Uncollected rents for the current rental period shall be apportioned if and when collected by either party.

**17. ADJUSTMENT OF UNASSESSED AND ABATED TAXES**

basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed.

**18. BROKER's FEE**
*(fill in fee with dollar amount or percentage; also name of Brokerage firm(s))*

~~A Broker's fee for professional services to the BUYER of ——————— (——— %) percent of Purchase Price is due from the SELLER to ——————————————, the Broker herein, but only if, as and when Seller's deed to Buyer is recorded and Seller receives the full purchase price. the Broker(s) herein, but if the SELLER pursuant to terms of clause 21 hereof retains the deposits made hereunder by the BUYER, said Broker(s) shall be entitled to receive from the SELLER an amount equal to one-half the amount so retained or an amount equal to the Broker's fee for professional services according to this contract, whichever is the lesser.~~

**19. BROKER(S) WARRANTY**

~~The Broker(s) named herein ——————— ——— warrant(s) that the Broker(s) is (are) duly licensed as such by the Commonwealth of Massachusetts.~~

**20. DEPOSIT**
*(fill in name)*

All deposits made hereunder shall be held in escrow by Van Dam & Traini, LLP as escrow agent in an non-interest bearing IOLTA account, subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement.

**21. BUYER's DEFAULT; DAMAGES**

If the BUYER shall fail to fulfill the BUYER's agreement herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages ~~unless within thirty days after the time for performance of this agreement or any extension hereof, the SELLER otherwise notifies the BUYER in writing~~ and this shall be Seller's sole and exclusive remedy at law and in equity for Buyer's default hereunder.

**22. RELEASE BY HUSBAND OR WIFE**

The SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said premises.

**23. BROKER AS PARTY**

~~The Broker(s) named herein join(s) in this agreement and become(s) a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing.~~

**24. LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc.**

If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder.

**25. WARRANTIES AND REPRESENTATIONS**
*(fill in); if none, state "none"; if any listed, indicate by whom each warranty or representation was made*

The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by the SELLER: None

**26. MORTGAGE CONTINGENCY CLAUSE**
*(omit if not provided for in Offer to Purchase)*

In order to help finance the acquisition of said premises, the BUYER shall apply for a conventional bank or other institutional mortgage loan of no more than $ 61~~4~~3,5~~0~~00, at prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a written commitment for such loan cannot be obtained on or before April 2~~5~~0, 2005, the BUYER may terminate this agreement by written notice to the SELLER prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage loan application conforming to the foregoing provisions on or before April 9, 2005. Buyer shall be required to submit one mortgage loan application, conforming to the provisions hereof, to satisfy Buyer's obligation to exercise diligent efforts hereunder.

**27. CONSTRUCTION OF AGREEMENT** This instrument, executed in multiple counterparts, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER, their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it.

**28. LEAD PAINT LAW** The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age.

**29. SMOKE DETECTORS** The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city or town in which said premises are located stating that said premises have been equipped with approved smoke detectors in conformity with applicable law.

**30. ADDITIONAL PROVISIONS** The initialed Rider A, attached hereto, are incorporated herein by reference.

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney.

SELLER – A. Anthony Guadalupe          SELLER – Debra Shopteese

BUYER – Thomas Dehner          BUYER – Carol Mallory

### EXTENSION

Date
The time for the performance of the foregoing agreement is extended until _____ o'clock
_____. M. on the _____ day of _____, 20____, time still being of the essence of this agreement as extended. In all other respects, this agreement is hereby ratified and confirmed.

This extension, executed in multiple counterparts, is intended to take effect as a sealed instrument.

SELLER          SELLER

BUYER          BUYER

Broker(s)

RIDER

Rider to Purchase and Sale Agreement ("Agreement") dated April 8, 2005, by and between A. Anthony Guadalupe and Debra Shopteese (together, the "Seller" or "Sellers") and Thomas Dehner and Carol Mallory (together, the "Buyer" or "Buyers"), pertaining to 55 Louder's Lane, Jamaica Plain, MA (the "Premises").

35. Any notice given hereunder shall be in writing and deemed duly given when delivered, or mailed by registered or certified mail, return receipt requested, postage and registration or certification charges prepaid, addressed as follows:

(a) To Seller:      A. Anthony Guadalupe
                    Deborah Shopteese
                    53 Louder's Lane
                    Jamaica Plain, MA 02130


(b) To Buyer:       Thomas Dehner and
                    Carol Mallory
                    11 Sunnyside Street


Jamaica Plain, MA 02130

Notwithstanding the foregoing, written notice transmitted by facsimile transmission shall meet the notice requirements of this Paragraph, if countersigned by the recipient to confirm receipt. Each party agrees to so countersign upon request contained in such notice. Notice by facsimile transmission shall be deemed given as of the date and time of transmission.

36.     Upon the request of the attorney for Buyer's lending institution, Seller shall execute and deliver, simultaneously with the delivery of the Deed, such documents and affidavits as are true and correct and reasonably required by said attorney with respect to such Closing, including, without limitation, with respect to (a) persons or parties in possession of the premises; (b) facts or conditions which may give rise to mechanic's or materialmen's liens; (c) the purchase price of the premises and whether the Seller has or intends to lend to the Buyer a portion thereof; (d) the absence of urea formaldehyde foam insulation on the Premises; (e) Form 1099 to be filed with the Internal Revenue Service (unless Seller completes such forms as excuse such filing); and (f) a certification that Seller is not a foreign individual or trust under IRSC Section 1445 and not subject to tax withholding on the sale price.

37.     Prior to the receipt of a written mortgage commitment, the Buyer shall have a reasonable right of reasonable access to the Premises for the purpose of showing the Premises to prospective mortgage lenders and their appraisers, agents or employees, duly authorized by such lender. Such right of access shall be exercised at reasonable times and after reasonable advance notice to the Seller, and shall be subject to Seller's consent, such consent not to be unreasonably

withheld or delayed. Without limitation, Seller may condition such consent upon the presence of Seller or Seller's agent at the time of any such exercise of access, and the giving of reasonable advance notice to the occupants of the Premises. After expiration of Buyer's mortgage contingency, Buyer shall have a reasonable right of access to the Premises for the pre-closing inspection and for taking of measurements, such right of access to be subject to the same terms and conditions set forth in this paragraph regarding access for showing the Premises to prospective mortgage lenders. Said access shall not exceed two separate dates. Buyer shall have the additional right, but not obligation, to access the Premises once for a surveyor to confirm the revised plot as more particularly described in Section 62 herein.

38.     Any matter which is the subject of a title or practice standard of the Real Estate Bar Association for Massachusetts at the time of the delivery of the Deed shall be governed by said title or practice standard to the extent applicable. However, the Buyer shall not be required to purchase the premises if, irrespective of such standard, title is not insurable in accordance with Paragraph 50 (c).

39.     All references to the "then current year" and like references with respect to real estate taxes payable for the Premises shall be construed to mean the then-current fiscal tax period within which such taxes are payable.

40.     Seller agrees to deliver the Premises to Buyer in broom-clean condition, with all personal property which is not included in this sale, and with all fixtures, appliances, equipment, mechanical systems and the grounds in substantially the same condition as at the time of Buyer's home inspection, reasonable use and wear thereof excepted. Seller shall deliver all of Seller's keys to the Premises to Buyer at closing, provided, however, that Buyer shall not occupy or begin moving into the Premises before recording of the deed without the express written consent of the Seller.

41.     Seller represents that Seller has caused no urea formaldehyde foam insulation ("UFFI") to be installed in the Premises, and has no actual knowledge of the presence of UFFI upon the Premises.

42.     At Closing, Seller shall use reasonable efforts to deliver to Buyer warranties and/or operational manuals, if any, then in Seller's possession which Seller may have received in connection with the mechanical systems, appliances and other equipment located upon the Premises, together with an assignment of any such warranties, if still in effect and so requested by the Buyer. Buyer acknowledges that the appliances and/or personal property included in this sale (i.e., refrigerator, stove) are in used condition and agrees that same shall be delivered at Closing in substantially the same condition as at the time of Buyer's home inspection, reasonable wear and use thereof excepted, with no warranty, express or implied, from Seller concerning the condition thereof.

43.     Buyer and Seller each warrants and represents to the other that neither of them has entered into any listing agreement or broker agreement with any real estate broker pursuant to which such real estate broker would claim a commission or other fee from Buyer or Seller in this

2

transaction, and each agrees to hold the other harmless from and indemnified against all loss, damage, claim, liability, cost and/or expense, including reasonable attorney's fees, incurred by either as a result of any claim, by and through an agreement with Seller or Buyer, against Buyer or Seller for a brokerage commission or fee on account of any such agreement. The provisions hereof shall survive delivery and recording of the deed.

44.    The following provision is added to Paragraph 21 (Buyer's Default; Damages): "The Buyer and Seller each hereby further agree that anticipated damages from a default by the Buyer are uncertain in amount and difficult to prove; the parties hereto wish agree to such liquidated damages in advance in the event of a Buyer's default as provided above in this Paragraph 21; that the amount of the deposit bears a reasonable relationship to the damages that the Seller would suffer in the event of a default by Buyer; and that the parties expressly consent to the amount of the deposit as being the acceptable measure of Seller's damages in the event of such a default by Buyer. The provisions of this Paragraph 21 shall survive delivery of the deed and may be introduced in evidence in any such action."

45.    The following provisions are hereby incorporated by reference at the end of Paragraph 26 (Mortgage Contingency Clause): "If a written loan commitment obtained by Buyer on or before April 250, 2005 contains conditions that are beyond Buyer's reasonable ability to control, achieve, or satisfy prior to Closing, using due diligence, Buyer may terminate this agreement under and in accordance with this Paragraph by giving written notice to the Seller prior to the expiration of April 250, 2005, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. Notwithstanding any provision of this Paragraph 26 to the contrary, and without implying or intending that any other condition which may be set by Buyer's mortgage lender would necessarily constitute valid grounds for Buyer to terminate this Agreement under this Paragraph 26, Buyer and Seller agree that, should Buyer receive a mortgage loan commitment subject to any condition requiring, or pertaining to, the sale or leasing of any real estate then owned by Buyer, or subject to title examination of the Premises and/or ordinary closing preparations by such lender's attorney, no such condition shall constitute grounds for termination by the Buyer of this Agreement pursuant to the provisions of this Paragraph 26".

46.    If any paragraph contained in this Rider conflicts in any way with the printed form of the Purchase and Sale Agreement, then the paragraph contained in this Rider shall control regarding such conflict.

47.    References in this Agreement to the "Closing" or "Closing date" shall mean the date set forth in Paragraph 8 for delivery of the deed.

48.    The Buyer and Seller each acknowledge that each has been afforded the opportunity to confer with legal counsel of his/her choice prior to signing this Agreement.

49.    This Agreement, including this Rider, when executed by Buyer and Seller, shall supersede all prior agreements and other understandings between the parties and represents the complete and full agreement of the parties hereto except as this Agreement is modified or altered by written agreement signed by the parties hereto. All prior offers and agreements between the parties with respect to the

3

transaction contemplated hereby and any such prior offers or agreements shall be null and void, upon execution hereof by Buyer and Seller.

50.    It is understood and agreed by the parties that the premises shall not be in conformity with the provisions of the Agreement unless:

(a)    All buildings, structures, improvements, including but not limited to any fences, driveways and all means of access to the premises shall be located completely within the boundary lines of said premises and shall not encroach upon or under any property not within such boundary lines;

(b)    No building, structure, septic system, private water wells, all electric, gas and utility lines, if any, or improvements, and all means of access to the premises belonging to any person or entity shall encroach upon or under said premises;

(c )    Title to the premises is insurable for the benefit of the Buyer by a title insurance company at normal premium rates in the American Land Title Association form currently in use, subject only to those printed exceptions to title normally included in the jacket to such form as standard to the exceptions set forth in paragraph 4 of this Agreement and the exceptions noted on Seller's Title Insurance Policy attached hereto;

(d)    The premises shall abut a public way duly laid out or accepted as such by the City of Boston, Massachusetts.

51.    ~~Sellers hereby represent, to the best of Seller's knowledge and belief, that Seller has not entered into any written contracts, nor is there any litigation nor are there other proceedings pending involving the premises, which will be binding upon the Buyer or affect Buyer in any manner.  The provisions of this paragraph shall survive delivery of the deed.~~ DELETED

52.    To the best of Seller's knowledge, the premises do not contain an underground storage tank or other subsurface facility holding petroleum or oil products currently in use or previously abandoned.  The provisions of this paragraph shall survive delivery and recording of the deed.

53.    In the event this Agreement contains any provision that the Buyer shall accept the title of the Seller subject to easements and restrictions of record, if any, then such acceptance of title subject to easements and restrictions shall be limited to those of record, if any, insofar as they may be in force and effect, which do not adversely affect the premises or the use thereof by the Buyer as a single family residence and which (i) are acceptable to any mortgagee granting the financing for Buyer's acquisition of the premises, (ii) comply with Federal Home Loan Mortgage Corporation and Federal National Mortgage Association loan requirements in effect on the Closing Date, (iii) give no rights to anyone to enter upon, cross or use any portion of the Premises, except for utility easements, (iv) have been duly satisfied of record at or prior to the closing in the event consent(s) or approval(s) are needed, and (v) have been duly complied with of record (without limitation, a certificate of compliance) at or prior to the closing in the event of any order of condition or any other state, county, or municipal (or any subdivisions thereof) requirements of record in connection with the premises.

54.    Buyer hereby acknowledges that Buyer has been permitted adequate time and full access to the Premises for the purpose of conducting home, pest, radon, and other requested inspections of the

4

Premises prior to the execution by Buyer of this Agreement, and that, at Buyer's cost and employing inspector(s) of Buyer's choice, one or more of such inspections were performed to Buyer's satisfaction. Except as otherwise expressly provided in this Agreement, Buyer hereby agrees to take title to, and possession of, the Premises in their "as is" condition as of the date hereof, reasonable use and wear thereof excepted; and, without limitation, no matter identified in any report of any such inspector shall constitute a basis for objecting to the condition of the Premises at Closing or thereafter. Buyer further acknowledges that, in entering into and performing this agreement, Buyer relies solely upon such inspections and inspection reports, as well as Buyer's own observations and inspections of the Premises, and not upon any statements or representations made by the Seller, or any agent of the Seller, as to the condition of the Premises or as to any other matter

affecting Buyer's decision to purchase the Premises. ~~The provisions hereof shall survive delivery and recording of the deed.~~

55.   ~~Seller has been advised of the requirements of Massachusetts General Laws, Chapter 255, Section 121 regarding the presence of Urea Formaldehyde Foam Insulation and has agreed to execute any necessary documents pursuant to Massachusetts General Laws, Chapter 167, Section 47.   Seller acknowledges that to the best of its knowledge no UFFI is located in the premises.~~DELETED

56.   Buyer acknowledges (i) having notice of Buyer's right to a lead paint inspection, prior to the date hereof; (ii) that Seller has disclosed to Buyer that the Premises may contain lead-based materials and lead-based materials are a health hazard to children under the age of six (6) years; and (iii) that Buyer has been provided the opportunity under, and in accordance with, applicable law to test the Premises for the presence of lead paint and lead based materials. Buyer does not desire a lead paint inspection or a lead paint inspection contingency in this Agreement and, therefore, none is provided. Seller makes no representations or warranties regarding the presence or absence of lead paint applied to, or materials containing lead in, any portion of the Premises. Buyer hereby agrees that, effective upon recording of the deed from Seller to Buyer, Buyer shall assume all responsibility for complying with all applicable laws concerning lead paint and lead-based materials in and upon the Premises, and Seller shall have no liability to Buyer, Buyer's heirs, successors and assigns, of any other person claiming by, through or under Buyer, on account of the presence of lead paint and lead-based materials in and upon the Premises. The provisions hereof shall survive delivery and recording of the deed.

57.   Notwithstanding the foregoing, Seller hereby represents that, to the best of Seller's knowledge, no notice or communication has been received by Seller from any public authority that there exists any eminent domain proceeding, condemnation proceeding or any condition which violates any municipal, state or federal law, rule or regulation which relates to the premises and which has not heretofore been rectified. Seller will promptly advise Buyer upon learning of such communications.

58.   Seller represents that the purchase price, less any anticipated adjustments and Seller's closing costs, will be sufficient to permit complete payment of all outstanding encumbrances upon the premises or that Seller has cash on hand to pay any expected deficit.

59.   Seller represents: that Seller has not granted to any party any outstanding options or rights of first refusal to purchase the premises nor has Seller entered into any outstanding agreements (other than this Agreement) to sell, convey or rent the premises to any other party.

entered into any written contracts, nor is there any litigation nor are there other proceedings pending involving the premises, which will be binding upon the Buyers or affect Buyers in any manner. The provisions of this paragraph shall survive delivery and recording of the deed.

61. To the best of Sellers' knowledge, the premises do not contain an underground storage tank or other subsurface facility holding petroleum or oil products currently in use or previously abandoned, that the premise do not contain any toxic substances, and the premises do not violate any federal, state or local laws, statutes, ordinances or regulations as to environmental matters, heath codes, and wetlands.

~~The Parties acknowledge that at or prior to the Closing, Seller will record a plan of the property and will reconfigure the lot lines between the Seller's property and the property being purchased. Seller shall assume all costs and fees associated with the reconfiguration~~62.     The parties agree that prior to the Closing the Seller may relocate the common lot line between the properties known as 53 Louder Lane and 55 Louder Lane (the Premises) (the "Lot Line"), both of which are owned by the Seller and for which owners' title are recorded at the Suffolk Registry of Deeds in Book ___, Page ___ and Book ___, Page ___, respectively, provided such relocation is not greater than four (4) feet in a westerly direction from the parallel point on the existing common lot line. The location of the relocated lot line shall conform substantially with the plot plan attached hereto as Exhibit A (the "Plot Plan"). .If applicable, the Plot Plan shall conform with the requirements of Section 6 of this Agreement. The Sellers acknowledge that such relocation requires: (a) certain approvals, including, but not necessarily limited to, a permit from the Inspectional Services Division based upon a Certified Plot Plan and (b) recording of such ISD-approved Certified Plot Plan. The Sellers represent, warrant and agree that regardless of whether the Lot Line is ultimately relocated, they shall: (1) make diligent efforts to obtain prior to the Closing any and all approvals necessary for the legal and valid relocation of the Lot Line, (2) be responsible for all costs and fees associated with any effort to relocate the Lot Line, and (3) indemnify the Buyer for any costs the Buyers may incur as a result of Buyer's efforts to assist the Sellers efforts to relocate the Lot Line, such damages to be deducted from the Sellers' proceeds at Closing. The failure of the Seller to record the legal and valid relocation of the Lot Line shall not be deemed the basis of an extension under Section 10 hereof nor be deemed the basis of a default excusing the Seller of other obligations to perform hereunder. Buyers shall have the right to specific performance.

In the event the Sellers are unable to record the legal and valid relocation of the Lot Line as provided in this Section by the unamended Closing date specified in Section 8 hereof, the Seller shall be entitled, upon written notice to the Buyers, to an extension in the Closing date up to ninety (90) days to complete the legal and valid relocation of the Lot Line. The Sellers acknowledge that in order for the long-term financing of the purchase of the Premises the Buyers are endeavoring to sell their current residence at 11 Sunnyside Street, Jamaica Plain and are relying on the reasonable certainty of the Closing date. Notwithstanding any provision in this Agreement to the contrary, in the event the Sellers' exercise their right to the foregoing extension, then the Sellers shall be liable and shall reimburse the Buyers for any costs, fees, charges or damages, including, but not limited to extra moving expenses, temporary housing and storage, which may result from the Sellers' exercising of such extension, such damages to be deducted from the Sellers proceeds at Closing or by direct payment to Buyers in the event no Closing occurs.

In the event the Sellers are unable to record the legal and valid relocation of the Lot Line as provided in this Section within ninety (90) days after the unamended Closing date specified in Section 8 hereto, then the Buyer shall be entitled at their sole option to purchase the Premises under the terms of this agreement without the relocated Lot Line

This section shall survive the delivery and recording of the deed.

6

Apr. 28 '05 03:24p    Adam D. Rogoff    fax.017-904-4931    (617) 469-2503    p.2
LHW UFFICES
Case 1:05-cv-11122-JLT -- Document 3-2    Filed 06/06/2005    Page 16 of 27

$EXF$

# VAN DAM & TRAINI, LLP

Counselors at Law
220 Boylston Street • Chestnut Hill • MA 02467-2090
(617) 969-2900

Gerald Van Dam                          (617) 964-4631 (facsimile)                          Paralegal
gvandam@trainilaw.com                                                                       Andrea Geeta
                                                                                           ageeta@trainilaw.com

Rosemary Traini
also admitted in DC
rtraini@trainilaw.com

April 22, 2005                                      VIA FACSIMILE AND E-MAIL

Adam Rogoff, Esq.
31 Conway Street
Roslindale, MA 02131

RE:    55 Louder's Lane
       Jamaica Plain, MA

Dear Adam:

My apologies for not responding to you earlier today but I needed to speak with my clients prior to responding to you.

It is my clients' position that they are not agreeable to the terms of the proposed changes to the purchase and sale agreement as set forth in the proposed Paragraph 62, even as we have discussed amending same.

It is further their position that the proposed changes to the purchase and sale agreement are substantially different than both the original offer and the proposed agreement that was sent to the buyers. As a result, the sellers are of the opinion that the parties have not reached a mutually acceptable purchase and sale agreement as contemplated by the offer, and that the proposed transaction is no longer viable.

Mr. Guadalupe is holding your clients' $1,000 deposit check and advises that he will return it to them under separate cover.

Thank you for your attention.

Very truly yours,

Rosemary Traini

RT:s
cc: A.A. Guadalupe and Deborah Shopteese (via e-mail)

**CIVIL ACTION**
**COVER SHEET**

DOCKET NO(s)
05-1678

Trial Court of Massachusetts
Superior Court Department
County:_____

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Thomas Dehner, Carol Mallory | Angel Anthony Guadalupe, Corbin Shopkeese |

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE
Adam Rogoff, BBO# 634093
31 Evans Street
Barchendale MA 02114
617 769 2504

Board of Bar Overseers number:

ATTORNEY (if known)

### Origin code and track designation

Place an x in one box only:
- ☒ 1. F01 Original Complaint
- ☐ 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- ☐ 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- ☐ 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- ☐ 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- ☐ 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B01 | Specific Performance of Contract | (A) | (×) Yes ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ................................................ $
2. Total Doctor expenses ................................................. $0
3. Total chiropractic expenses ........................................... $
4. Total physical therapy expenses ...................................... $
5. Total other expenses (describe) ...................................... $
   Subtotal $ .........

B. Documented lost wages and compensation to date .......................... $ .......
C. Documented property damages to date ..................................... $ .......
D. Reasonably anticipated future medical and hospital expenses .............. $ .......
E. Reasonably anticipated lost wages ....................................... $ .......
F. Other documented items of damages (describe)
   $ ...........

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$ ...........
TOTAL $ .............

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

TOTAL $. .............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 1/d9/05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON

JUNE 2, 2005 , THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY. _____

ASSISTANT CLERK.

3

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss**                                  **SUPERIOR COURT DEPARTMENT**
                                                 **CIVIL ACTION NO.**

                                        4/29/05                          05-1678 -⅓

**Thomas Dehner and**              )     Allowed ex parte                          justice
**Carol Mallory,**                 )
                **Plaintiffs**     )
                                   )     **MOTION FOR MEMORANDUM**
**v.**                             )     **OF LIS PENDENS**
                                   )
**Angel Anthony Guadalupe and**    )
**Debra Shopteese,**               )
                **Defendants**     )
                                   )

Now come the plaintiffs in the above-entitled matter and move for approval of a

Memorandum of Lis Pendens relating to the real estate of the Defendants, Angel Anthony

Guadalupe and Debra Shopteese, located at 55 Louder's Lane in Boston, Suffolk County,

Massachusetts, which land is more fully described in a deed recorded with the Suffolk County

Registry of Deeds in Book 35514, Page 328.

The plaintiffs state that the subject matter of the action constitutes a claim of a right to

title to real property or the use and occupation thereof or the buildings thereon.

Plaintiff's Affidavit in support of the above motion is attached hereto.

**I HEREBY ATTEST AND CERTIFY ON**
JUNE 2, 2005
_____, THAT THE
**FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.**

**MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT**

BY: _____

ASSISTANT    CLERK.

Respectfully submitted,
Thomas Dehner & Carol Mallory
By their attorney,

_____
Adam Rogoff, Esq.
BBO # 634093
31 Conway Street
Roslindale, MA 02131
(617) 469-2504

Dated: April 29, 2005

4

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.

4/29/05

05-1678 -

*Allowed and authorized to issue ex parte.*

Thomas Dehner and
Carol Mallory,
     Plaintiffs

v.

Angel Anthony Guadalupe and
Debra Shopteese,
     Defendants

**MEMORANDUM OF LIS PENDENS**

*Justice*

Notice is hereby given, pursuant to Massachusetts G.L. c. 184, sec. 15, that the complaint in the above-entitled action was filed in Suffolk Superior Court on April 29, 2005. Said complaint filed by plaintiffs' Thomas Dehner and Carol Mallory affects the title to certain real property owned by the defendants, Angel Anthony Guadalupe and Debra Shopteese, and located in Boston, Suffolk County, Massachusetts, as more particularly described as follows:

The subject property is certain real estate located at 55 Louder's Lane in the Jamaica Plain section of Boston, Massachusetts, containing approximately 14,000 square feet of land more or less. The Property is the land described in a deed recorded in the Suffolk County Registry of Deeds in Book 35514, Page 328.

Having examined the Complaint in this matter, I hereby determine that the above-captioned action constitutes a claim of a right to title in real property or the use and occupation thereof or the building thereon, and so determine and certify under the provisions of M.G.L. c. 184, sec. 15.

Dated: ~~May~~ April 29, 2005

Justice, Superior Court

I HEREBY ATTEST AND CERTIFY ON
JUNE 2, 2005 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:

ASSISTANT CLERK.

**5**

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**                                    **SUPERIOR COURT**
                                                  **C.A. No. 2005-1678**

| | |
|---|---|
| **THOMAS DEHNER and CAROL** | ) |
| **MALLORY,** | ) |
| **Plaintiffs** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ANGEL ANTHONY GUADALUPE** | ) |
| **and DEBRA SHOPTEESE,** | ) |
| **Defendants** | ) |
| | ) |

## ANSWER TO VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE

Now come the Defendants, Angel Anthony Guadalupe and Debra Shopteese, and answer said

Complaint as follows:

1. Admitted.

2. Admitted.

3. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, are without knowledge

   or information sufficient to form a belief as to the allegations set forth in this paragraph

   of the Plaintiffs' Complaint.

4. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, are without knowledge

   or information sufficient to form a belief as to the allegations set forth in this paragraph

   of the Plaintiffs' Complaint.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, admit that the Plaintiffs were shown the Property by Debra Shopteese on March 19, 2005 and that Debra Shopteese represented to them that the Defendants intended to relocate the common plot line, but the Defendants deny that Debra Shopteese represented that the plot line would be relocated four feet to the west.

10. Insofar as the allegation in this paragraph of the Plaintiffs' Complaint inherently implies that the Defendants agreed to move the plot line four feet to the west, the Defendants, Angel Anthony Guadalupe and Debra Shopteese deny the allegation set forth in this paragraph of the Plaintiffs' Complaint. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, admit that a relocation of the plot line would allow sufficient frontage on the Defendants' own parcel to allow for further subdivision into two buildable lots.

11. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, admit that the Plaintiffs saw the property several more times and that they had several more conversations with Defendant Shopteese prior to making an offer on the property, but the Defendants, Angel Anthony Guadalupe and Debra Shopteese, deny that in each of these conversations Debra Shopteese represented the Defendants were planning to move the lot line by four or four and one half feet.

12. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, admit that Plaintiffs executed the document marked as Exhibit "B" to the Plaintiff's Complaint, but they deny that said document in the form presented constitutes a standard Offer to Purchase Real Estate.

13. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, admit that the Plaintiffs issued a check, a copy of which is attached to the Complaint as Exhibit "C."

14. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, admit that paragraph three (3) of Exhibit "B" states same.

15. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, admit that Defendant Angel Anthony Guadalupe signed Exhibit "B" but deny the remainder of the allegation.

16. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, admit that Angel Anthony Guadalupe made such modifications to Exhibit "B."

17. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, admit that at that time the details of any agreement in which they may have entered had not been finalized and denies the remainder of the allegation.

18. Admitted.

19. Denied.

20. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, admit that on the date stated they provided the Plaintiffs Exhibit "D".

21. Denied

22. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, admit that the Plaintiffs provide them with Exhibit "E" but deny the remainder of the allegation.

23. Denied.

24. Denied.

25. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, deny making any such representations and are without knowledge or information sufficient to form a belief as to the remaining allegations set forth in this paragraph of the Plaintiffs' Complaint.

26. Denied.

27. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, deny that at any time they agreed to produce the plot plan as described or that they were under any obligation to do so.

28. The Defendants, Angel Anthony Guadalupe and Debra Shopteese, admit that their counsel sent to plaintiff's counsel the letter marked as Exhibit "F."

29. Denied.

30. Denied.

31. Denied.

32. Denied.

33. To the extent that this allegation realleges prior paragraphs, the Defendants answer as they previously set forth in response to each individual paragraph.

34. Denied.

35. Denied.

36. Denied.

37. To the extent that this allegation realleges prior paragraphs, the Defendants answer as they previously set forth in response to each individual paragraph.

38. Denied.

39. Paragraph 39 consists of legal argument and conclusions of law that require no answer. To the extent that paragraph 39 alleges facts, they are denied.

The remainder of the Verified Complaint consists of Prayers for Relief that require no answer.

## FIRST AFFIRMATIVE DEFENSE

With respect to each and every Count of the Plaintiffs' Verified Complaint, the Plaintiffs

have failed to state a claim for which relief can be granted, wherefore this action should be

dismissed pursuant to Mass. R. Civ. P. 12(b)(6).

## SECOND DEFENSE

The Plaintiffs' claims are barred under the doctrine of unclean hands.

## THIRD DEFENSE

If the Plaintiffs have suffered any damages, which the Defendants deny, their claims for

relief are barred because such damages are a result of the Plaintiffs' own conduct.

THE DEFENDANTS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.

**I HEREBY ATTEST AND CERTIFY ON**

____JUNE 2, 2005____, THAT THE

**FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.**

**MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT**

BY: _____

ASSISTANT CLERK.

DATED: _____

Respectfully submitted,
ANGEL ANTHONY GUADALUPE and
DEBRA SHOPTEESE, Defendants,
By their Attorney,

Michael K. Gillis, Esq.
Gillis & Bikofsky, P.C.
1150 Walnut St.
Newton, MA 02461
(617) 244-4300
BBO # 543551

## CERTIFICATE OF SERVICE

I, Michael K. Gillis, of the firm Gillis & Bikofsky, P.C., hereby certify that on this date I caused a copy of the within document to be served on all parties of interest in this matter, within the time standards or by leave of the Regional Administrative Justice, by mailing a copy of same, first class mail, postage prepaid, direct to:

Adam Rogoff, Esq.
31 Conway St.
Roslindale, MA 02131

Date: 5/27/05

Michael K. Gillis, Esq.
Gillis & Bikofsky, P.C.
1150 Walnut Street
Newton, MA 02461
Tel. No. (617) 244-4300
BBO #: 543551



ATTORNEYS AT LAW

May 31, 2005

STEVEN E. GRILL
TEL. 603.695.8755
FAX 603.695.8700
SGRILL@DEVINEMILLIMET.COM

**Via Hand Delivery**

Tony Anastas, Clerk of Court
U.S. District Court - Massachusetts
One Courthouse Way, Suite 2300
Boston, MA 02210

Re:    Atlas Garden Supply, LLC v. Intruder, Inc., Ames True Temper Company and Harry S.
       Billado

Dear Clerk Anastas:

Enclosed herewith for filing please find:

1.  Notice of Removal (with attached exhibits);

2.  Civil Cover Sheet;

3.  Category Sheet

4.  Motion for Admission *Pro Hac Vice*;

5.  Declaration of Steven E. Grill In Support of Motion for Admission Pro Hac Vice;

6.  Entry filing fee in the amount of $250; and,

7.  *Pro Hac Vice* filing fee in the amount of $50.

Thank you for your assistance in this matter.

Tony Anastas, Clerk of Court
May 31, 2005
Page 2

Please let me know if you should have any questions.

Very truly yours,

Steven E. Grill

SEG:gpl
Enclosures

cc:    Clerk, Suffolk County Superior Courthouse (No. SUCV2005-01674)
       David A. Brown, Esquire (w/encs.)
       Intruder, Inc. (w/encs.)
       Ames True Temper Company (w/encs.)

J:\wdox\docs\clients\16430\74011\M0724549.DOC