UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ATLAS GARDEN SUPPLY LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>INTRUDER, INC., AMES TRUE TEMPER )<br>COMPANY, AND HARRY S. BILLADO, )<br><br>Defendants. ) | C. A. No. 05-11122 JLT |

**MOTION OF DEFENDANT INTRUDER, INC. FOR LEAVE TO AMEND
ANSWER TO ADD COUNTERCLAIMS AND CROSS-CLAIMS**

Defendant Intruder, Inc. ("Intruder") hereby seeks leave of court to amend its answer in

this case to include counterclaims against plaintiff Atlas Garden Supply, LLC ("Atlas") as well

as cross-claims against co-defendants Ames True Temper Company ("Ames") and Harry S.

Billado ("Billado"). A true copy of the proposed *Amended Answer of Defendant Intruder, Inc. to*

*Complaint and Jury Demand, Counterclaims and Cross-claims* ("Amended Answer") is attached

hereto as Exhibit A. Pursuant to a standstill agreement by and among the defendants, Intruder

did not previously file its cross-claims while all parties were engaged in settlement discussions.

That standstill agreement has now expired – though the parties are still discussing options for

mediation and possible settlement – and Intruder wishes to bring its cross-claims at this time. In

addition, the counterclaims against Atlas, which were previously asserted as affirmative

defenses, are now being designated as counterclaims. Depositions in the matter have not yet

commenced, and no party will be prejudiced by the filing of these claims which are necessary for

a full, fair and judicially economical adjudication of all disputes between the parties in one

proceeding.

1.    On January 17, 2006, defendants Intruder, Atlas and Billado entered into a Standstill Agreement ("Standstill") in order to, among other things, "facilitate the continuation of discussions among them and with [plaintiff] Atlas in efforts to amicably resolve their differences and to achieve an amicable resolution of the claims asserted against them by Atlas in [the case]." A true copy of the Standstill Agreement is attached hereto as <u>Exhibit B</u>.  The Standstill expired by its own terms on March 18, 2006, sixty (60) days after the effective date thereof.  During the standstill period, all parties produced documents pursuant to the Court's orders.[1]

2.    The parties to the Standstill agreed that there would be no prejudicial effect in entering the Standstill, that entering the agreement does not "constitute an admission or waiver" by any party of any cause of action, and that each party "expressly agrees to consent to any motion by either of the others seeking leave to amend any answer or other pleading to assert claims or cross-claims on the basis of timeliness," provided that any such motion is "brought forward promptly following the termination of" the Standstill.

3.    As set forth in the attached <u>Exhibit A</u>, the cross-claims against Ames are for indemnification (common law and contractual) and contribution, in the event Intruder is found liable in any way for damages Atlas is seeking due to its failures to honor its agreement with Billado.  Intruder's cross-claims against Billado are in contract (as Intruder was a third-party beneficiary under Billado's agreement with Atlas) for his wrongful termination of the agreement, as well as in tort for intentional interference with Intruder's contract and business relations with Ames when Billado sought, more than once, to terminate his obligations to Atlas and Intruder in an effort to deal directly with Ames, thereby substantially increasing his royalties on the

---

[1]    The productions by Atlas, Billado and Ames provided additional information forming the basis of Intruder's counterclaims and cross-claims.  For example, Atlas provided pleadings from and other information concerning the arbitration proceedings Billado had instituted against it, and which Atlas kept secret from Intruder until after Intruder has signed another agreement with Ames.

manufacture and sale of the rake.  For this, Intruder further seeks multiple damages and attorneys
fees against Billado under M.G.L. c. 93A.

      4.      Intruder's counterclaims against Atlas are for breach of contract, breach of the
implied covenant of good faith and fair dealing, intentional interference with contractual and
business relations, contractual and common law indemnification, contribution and damages for
violation M.G.L. c. 93A.  Intruder has already asserted these claims as affirmative defenses – <u>see</u>
Second Affirmative Defense ("unclean hands") and Tenth ("[Atlas's] claims barred in whole or
in part due to plaintiff's breaches of or failure to honor the alleged contracts at issue") – and
Atlas is already aware of these claims.  <u>See</u> <u>Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.</u>, 15
F.3d 1222, 1226 (1st Cir. 1994) (purpose of Rule 8(c) is to give opposing party notice of the
defense and opportunity to develop evidence and offer counter arguments); <u>Phoenix-Apollo Steel
Co. v. Atlas Tack Corp.</u>, 9 F.R.D. 454, 454-55 (D. Mass. 1949) (allowing defendant, pursuant to
Rule 8(c), to designate vague and confusing allegations in answer into either affirmative defenses
or counterclaims).  Allowing these defenses to be designated now as counterclaims is permissible
under Rule 8(c) and will serve the interests of full and fair adjudication of all claims against all
parties in one proceeding.

      5.      Other than the addition of the counterclaims and cross-claims, Intruder's answer
remains identical to its answer previously filed.  It is well-known that leave to amend pleadings
"shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and – while such leave
should not be granted automatically – the Supreme Court has made clear it should be given
"liberally."  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) ("[i]f the underlying facts or
circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded
an opportunity to test his claim on the merits"); <u>see also</u> <u>Resolution Trust Corp. v. Gold</u>, 30 F.3d

251, 253 (1st Cir. 1994) (leave to amend is to be "freely given" unless amendment would be futile or reward undue or intended delay).

WHEREFORE, defendant Intruder, Inc. respectfully requests that this Court allow the foregoing *Motion for Leave to Amend*, allow Intruder to file and serve its *Amended Complaint* in the form attached hereto as <u>Exhibit</u> <u>A</u>, including its cross-claims and counterclaims, and provide Intruder such other and further relief as this Court deems proper.

Respectfully submitted,

INTRUDER, INC.,
By its attorneys,

/s/Edward W. Little, Jr.
Daniel J. Kelly, BBO # 553926
dkelly@ghlaw.com
Edward W. Little Jr., BBO # 628985
elittle@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
Dated:  April 6, 2006     (617) 345-7000

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the foregoing *Motion of Defendant Intruder, Inc. for Leave to Amend Answer to Add Counterclaims and Cross-Claims* was served upon the attorneys of record for each party by first class mail, postage prepaid, and where possible by electronic means via the CM/ECF filing and notification system:

David A. Brown, Esq.                     Mark A. Willard, Esq.
Katy E. Koski, Esq.                      Anthony M. Moccia, Esq.
Sherin and Lodgen LLP                    Eckert Seamans Cherin & Melllot, LLC
101 Federal Street                       One International Place, 18th Floor
Boston, MA 02110                         Boston, MA 02110

Danielle L. Pacik, Esq.
Steve E. Grill, Esq.
Devine, Millimet & Branch
111 Amherst Street
P.O. Box 109
Manchester, NH 03105


By:      /s/Edward W. Little, Jr.

Date:    April 6, 2006


-5-

**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
ATLAS GARDEN SUPPY LLC,             )
                                    )
            Plaintiff,              )
                                    )
    v.                              )
                                    )        C. A. No. 05-11122 JLT
INTRUDER, INC., AMES TRUE TEMPER    )
COMPANY, AND HARRY S. BILLADO,      )
                                    )
            Defendants.             )
_____      )

**AMENDED ANSWER OF DEFENDANT INTRUDER, INC. TO COMPLAINT AND
JURY DEMAND, COUNTERCLAIMS AND CROSS-CLAIMS**

Defendant Intruder, Inc. ("Intruder") hereby answers the Complaint and Jury Demand

dated April 28, 2005 ("Complaint"), and brings counterclaims and cross-claims as follows:

**Introduction**

1.      Intruder admits that this action involves claims related to a lawn rake, referred to

at times as a "clog free" rake; further admits that defendant Harry S. Billado ("Billado") is an

inventor of the rake; and further admits that plaintiff Atlas Garden Supply, LLC ("Atlas")

purportedly entered into a written agreement concerning the rake, the terms of which agreement

speak for themselves.  Intruder is without further knowledge or information sufficient to form a

belief as to the truth of the remaining allegations made in paragraph 1 of the Complaint, and

therefore denies same.

2.      Intruder denies the allegations made in paragraph 2 of the Complaint.

3.      Intruder admits that Atlas is attempting to seek damages from all defendants

under various legal theories.  Intruder denies the remaining allegations made in paragraph 3 of

the Complaint.

**Parties**

4.      Intruder is without knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 4 of the Complaint, and therefore denies same.

5.      Intruder is without knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 5 of the Complaint, and therefore denies same.

6.      Intruder admits the allegations made in paragraph 6 of the Complaint.

7.      Intruder is without knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 7 of the Complaint, and therefore denies same.

**Factual Background**

**A.      The Atlas License[1]**

8.      Intruder admits that a rake referred to as the "waverake" has also been referred to as being a clog-free rake.  Intruder further admits that, on information and belief, Atlas and Billado purportedly entered into a written agreement concerning the rake, the terms of that agreement speaking for themselves.  Intruder denies the remaining allegations made in paragraph 8 of the Complaint.

9.      Intruder admits that Billado granted certain rights to Atlas, the terms of which are set forth in whole or in part in a written agreement which speaks for itself.  Intruder denies the remaining allegations made in paragraph 9 of the Complaint.

10.      Intruder admits that the language quoted in paragraph 10 of the Complaint comports with language in the cited provisions of the so-called Atlas License.  That language, however, is part of a written document, the terms of which speak for themselves.  Intruder denies

---

[1]      The headings herein are used to mirror those in the Complaint, and are repeated solely for convenience.  To the extent any or all headings are deemed to constitute allegations against Intruder, Intruder hereby denies all such allegations.

all remaining allegations made in paragraph 10 of the Complaint.

11.    On information and belief, Intruder admits that Atlas had certain sublicensing rights from Billado.  Intruder denies the remaining allegations made in paragraph 11 of the Complaint.

12.    Intruder admits that the language quoted in paragraph 12 of the Complaint comports with language in the cited provision of the so-called Atlas License.  That language, however, is part of a written document, the terms of which speak for themselves.  Intruder denies all remaining allegations made in paragraph 12 of the Complaint.

13.    Intruder is without knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 13 of the Complaint, and therefore denies same.

**B.    The Intruder Sublicense**

14.    Intruder admits that on or about March 1, 2001, Atlas granted Intruder exclusive rights concerning the rake, as well as other rights set forth in a written agreement between Atlas and Intruder.  The terms of that agreement speak for themselves.  Intruder denies the remaining allegations made in paragraph 14 of the Complaint.

15.    Intruder admits that the language quoted in paragraph 15 of the Complaint comports with language in the cited provision of the so-called Intruder Sublicense.  That language, however, is part of a written document, the terms of which speak for themselves.  Intruder denies all remaining allegations made in paragraph 15 of the Complaint.

16.    Intruder admits that the language quoted in paragraph 16 of the Complaint comports with language in the cited provision of the so-called Intruder Sublicense.  That language, however, is part of a written document, the terms of which speak for themselves.  Intruder denies all remaining allegations made in paragraph 16 of the Complaint.

17.    Intruder admits that the language quoted in paragraph 17 of the Complaint

comports with language in the cited provision of the so-called Intruder Sublicense. That language, however, is part of a written document, the terms of which speak for themselves. Intruder denies all remaining allegations made in paragraph 17 of the Complaint.

18.     Intruder admits that it was allowed to sublicense certain rights under its arrangement with Atlas. Further, the rights of Intruder are set forth in whole or in part in a written document, the terms of which speak for themselves. Intruder denies all remaining allegations made in paragraph 18 of the Complaint.

19.     Intruder admits that the language quoted in paragraph 19 of the Complaint comports with language in the cited provision of the so-called Intruder Sublicense. That language, however, is part of a written document, the terms of which speak for themselves. Intruder denies all remaining allegations made in paragraph 19 of the Complaint.

20.     Intruder admits that the language quoted in paragraph 20 of the Complaint comports with language in the cited provision of the so-called Intruder Sublicense. That language, however, is part of a written document, the terms of which speak for themselves. Intruder denies all remaining allegations made in paragraph 20 of the Complaint.

**C.     The Ames Sublicense**

21.     Intruder admits that it entered into an agreement with defendant Ames True Temper Company ("Ames") in 2002 concerning the rake, as well as subsequent agreements. Intruder did so with Atlas's knowledge and consent. Intruder denies the remaining allegations made in paragraph 21 of the Complaint.

22.     Intruder admits that it granted certain rights in the rake to Ames, including the right to produce and sell the product in certain geographic regions. Intruder denies the remaining allegations made in paragraph 22 of the Complaint.

23.     Intruder admits that the language quoted in paragraph 23 of the Complaint

-4-

comports with language in the cited provision of the so-called Ames Sublicense.  That language, however, is part of a written document, the terms of which speak for themselves.  Intruder denies all remaining allegations made in paragraph 23 of the Complaint.

24.    Intruder admits that Ames sold the rake to Wal-Mart Stores, Inc. ("Wal-Mart") and, on information and belief, may have referred to the rakes as being "clog-free."  Intruder denies the remaining allegations made in paragraph 24 of the Complaint.

25.    Intruder is without knowledge or information sufficient to form a belief as to what Atlas knew or did not know as to the labeling of the rake at various times, and therefore denies allegations regarding same.  Intruder denies the remaining allegations made in paragraph 25 of the Complaint.

26.    Intruder admits that it was contacted by Atlas concerning certain labeling issues raised by Atlas.  Intruder denies the remaining allegations made in paragraph 26 of the Complaint.

27.    Intruder admits that Atlas made certain demands on Intruder, but denies all remaining allegations made in paragraph 27 of the Complaint.

28.    Intruder admits sending the email referenced in paragraph 28 of the Complaint, and admits informing Atlas that certain labels would be affixed to rakes.  Intruder denies the remaining allegations made in paragraph 28 of the Complaint.

29.    Intruder admits that Ames was labeling and shipping rakes to Wal-Mart.  Intruder is without knowledge or information sufficient to form a belief as to what Atlas may or may not have told Billado concerning these rakes.  Intruder denies the remaining allegations made in paragraph 29 of the Complaint.

**D.    Termination of the Atlas License**

30.    On information and belief, Intruder admits that Billado at one time claimed

termination of its arrangement with Atlas based in whole or in part on a labeling issue.  Intruder denies the remaining allegations made in paragraph 30 of the Complaint.

31.    Intruder admits that, on information and belief, Atlas denied the validity of Billado's claim for termination, as well as the fact that the dispute was eventually referred to arbitration.  Intruder denies the remaining allegations made in paragraph 31 of the Complaint.

32.    Intruder admits that Billado and Atlas ultimately arbitrated their dispute, and it denies the remaining allegations made in paragraph 32 of the Complaint.

33.    Intruder admits that an arbitrator determined that Atlas had breached its arrangement with Billado, and the arbitrator's determination is set forth in whole or in part in a written document the terms of which speak for itself.  Intruder was not a party to that arbitration proceeding.  Intruder denies the remaining allegations made in paragraph 33 of the Complaint.

34.    Intruder admits that it received the letter dated October 6, 2003, from counsel for Atlas and that the letter purported to make demands on Intruder.  Intruder denies the remaining allegations made in paragraph 34 of the Complaint.

35.    Intruder admits that the language quoted in paragraph 35 of the Complaint comports with language in the cited provision of the letter identified.  That language, however, is part of a written document, the terms of which speak for themselves.  Intruder denies all remaining allegations made in paragraph 35 of the Complaint.

36.    Intruder is without knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 36 of the Complaint, and therefore denies same.

37.    Intruder denies the allegations made in the first sentence of paragraph 37 of the Complaint.  Though Intruder admits that Ames continues to sell the rake to certain retail stores, Intruder is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations made in the second sentence of paragraph 37 of the Complaint, and therefore denies same.

38.     Intruder is without knowledge or information sufficient to form a belief as to any arrangement between Billado and Ames concerning the rakes, though on information and belief Intruder admits that there appears to exists some arrangement between them.  Intruder denies the remaining allegations made in paragraph 38 of the Complaint.

39.     Intruder denies the allegations made in paragraph 39 of the Complaint.

## Count I
### (Breach of Contact v. Intruder)

40.     Intruder repeats and realleges its preceding responses as if fully set forth herein.

41.     Intruder is without knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 41 of the Complaint, and therefore denies same.

42.     Intruder denies the allegations made in paragraph 42 of the Complaint.

43.     Intruder denies the allegations made in paragraph 43 of the Complaint.

44.     Intruder denies the allegations made in paragraph 44 of the Complaint.

45.     Intruder denies the allegations made in paragraph 45 of the Complaint.

46.     Intruder denies the allegations made in paragraph 46 of the Complaint.

47.     Intruder denies the allegations made in paragraph 47 of the Complaint.

## Count II
### (Breach of Implied Covenant of Good Faith and Fair Dealing v. Intruder)

48.     Intruder repeats and realleges its preceding responses as if fully set forth herein.

49.     The allegations made in paragraph 49 of the Complaint state conclusions of law to which no response is necessary.  To the extent the allegations are not construed as such, Intruder denies same and looks instead to obligations under Massachusetts law concerning any contractual arrangements between the parties.

50.    Intruder denies the allegations made in paragraph 50 of the Complaint.

51.    Intruder denies the allegations made in paragraph 51 of the Complaint.

**Count III**
**(Indemnification v. Intruder)**

52.    Intruder repeats and realleges its preceding responses as if fully set forth herein.

53.    The allegations made in paragraph 53 of the Complaint purport to construe rights

between the parties, some or all of which are set forth in a written document the terms of which

speak for itself.  Intruder denies the allegations made in paragraph 53 of the Complaint.

54.    Intruder denies the allegations made in paragraph 54 of the Complaint.

55.    Intruder denies the allegations made in paragraph 55 of the Complaint.

56.    Intruder denies the allegations made in paragraph 56 of the Complaint.

**Count IV**
**(Breach of Contract v. Billado)**

57.    Intruder repeats and realleges its preceding responses as if fully set forth herein.

58.    The allegations made in this paragraph do not pertain to Intruder, and therefore no

response is necessary.  To the extent any allegations herein are deemed to apply to Intruder,

Intruder denies same.

59.    The allegations made in this paragraph do not pertain to Intruder, and therefore no

response is necessary.  To the extent any allegations herein are deemed to apply to Intruder,

Intruder denies same.

60.    The allegations made in this paragraph do not pertain to Intruder, and therefore no

response is necessary.  To the extent any allegations herein are deemed to apply to Intruder,

Intruder denies same.

61.    The allegations made in this paragraph do not pertain to Intruder, and therefore no

response is necessary.  To the extent any allegations herein are deemed to apply to Intruder,

Intruder denies same.

<b><u>Count V</u></b><br>
<b>(Trademark Infringement v. All Defendants)</b>

62.    Intruder repeats and realleges its preceding responses as if fully set forth herein.

63.    Intruder denies the allegations made in paragraph 63 of the Complaint.

64.    Intruder denies the allegations made in paragraph 64 of the Complaint.

65.    Intruder denies the allegations made in paragraph 65 of the Complaint.

<b><u>Count VI</u></b><br>
<b>(Disgorgement and/or Restitution for Unjust Enrichment v. All Defendants)</b>

66.    Intruder repeats and realleges its preceding responses as if fully set forth herein.

67.    Intruder denies the allegations made in paragraph 67 of the Complaint.

68.    Intruder denies the allegations made in paragraph 68 of the Complaint.

69.    Intruder denies the allegations made in paragraph 69 of the Complaint.

70.    Intruder denies the allegations made in paragraph 70 of the Complaint.

71.    Intruder denies the allegations made in paragraph 71 of the Complaint.

<b><u>Count VII</u></b><br>
<b>(M.G.L. c. 93A v. Billado)</b>

72.    Intruder repeats and realleges its preceding responses as if fully set forth herein.

73.    The allegations made in this paragraph do not pertain to Intruder, and therefore no response is necessary.  To the extent any allegations herein are deemed to apply to Intruder, Intruder denies same.

74.    The allegations made in this paragraph do not pertain to Intruder, and therefore no response is necessary.  To the extent any allegations herein are deemed to apply to Intruder, Intruder denies same.

75.    The allegations made in this paragraph do not pertain to Intruder, and therefore no

-9-

response is necessary.  To the extent any allegations herein are deemed to apply to Intruder, Intruder denies same.

76.    The allegations made in this paragraph do not pertain to Intruder, and therefore no response is necessary.  To the extent any allegations herein are deemed to apply to Intruder, Intruder denies same.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrines of estoppel, waiver, ratification, and/or unclean hands.

### Third Affirmative Defense

Plaintiff's claims for damages fails because plaintiff did not mitigate or minimize any damages that it allegedly incurred.

### Fourth Affirmative Defense

Plaintiff's claims are barred by the doctrine of laches and/or the applicable statutes of limitation.

### Fifth Affirmative Defense

Plaintiff's claims are barred in whole or in part due to plaintiff's failure to register its alleged trademark rights, to the extent plaintiff in fact has or had any such rights at all.

### Sixth Affirmative Defense

To the extent plaintiff has or had any trademark rights, plaintiff's trademark and related claims are barred due to plaintiff's abandonment of said trademarks and associated rights.

**Seventh Affirmative Defense**

Plaintiff's claimed mark is neither distinctive nor famous, nor has it acquired secondary meaning among the public or trade.

**Eighth Affirmative Defense**

Plaintiff's claimed mark is in reality simply functional and/or a term which is merely descriptive of and used fairly and in good faith only to describe goods.

**Ninth Affirmative Defense**

Any use of the plaintiff's mark (if any exists or existed) was done without knowledge of plaintiff's prior use thereof, and such use has been continuous.

**Tenth Affirmative Defense**

Plaintiff's claims are barred in whole or in part due to plaintiff's breaches of or failure to honor the alleged contracts at issue.

**Eleventh Affirmative Defense**

Plaintiff's claims are barred because its damages, if any, were caused in whole or in part by others.

**Twelfth Affirmative Defense**

Plaintiff's claims are barred in whole or in party due to an arbitration and award.

**Thirteenth Affirmative Defense**

Plaintiff's claims are barred in whole or in party by the doctrines of res judicata and/or collateral estoppel.

**Fourteenth Affirmative Defense**

Plaintiff's claims are barred in whole or in part for failure of consideration.

**Fifteenth Affirmative Defense**

Plaintiff's claims are barred in whole or in part because they lack standing.

### Sixteenth Affirmative Defense

To the extent plaintiff's claims may be construed as sounding in whole or in part in tort, such claims should be reduced in whole or in part by contributory or comparative negligence, fault, responsibility or want of due care, which either bars recovery or requires proportionate reduction in any recoverable damages.

### Seventeenth Affirmative Defense

Intruder reserves the right to supplement this answer and rely upon any other applicable affirmative or other defenses which may be discovered or revealed during the course of these proceedings.

### COUNTERCLAIMS AND CROSS-CLAIMS

Counterclaim plaintiff and cross-claim plaintiff Intruder, Inc. ("Intruder") hereby brings the following counterclaims and cross-claims as follows:

### Introduction

1.    Intruder brings counterclaims against counterclaim defendant Atlas Garden Supply, LLC ("Atlas") for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of M.G.L. c. 93A arising out of Atlas's loss of an exclusive license to manufacture and sell a patented lawn rake (the "Rake" or "rake"). Intruder was Atlas's sublicensee and a third-party beneficiary under its license agreement with defendant Harry S. Billado ("Billado"), the inventor of the rake.

2.    When Atlas failed to take steps to ensure that the rake sold to the public was labeled with Billado's patent number, as was required under Atlas's agreement with Billado, Billado sued and obtained termination of his agreement with Atlas. Neither Intruder nor its

sublicensee, defendant Ames True Temper Company ("Ames"), had any obligation to label the rake, and, though they attempted to assist Atlas in complying with its agreement with Billado, Atlas ultimately lost its agreement with Billado. Atlas additionally committed unfair and deceptive acts and practices in failing to inform Intruder of Billado's claims against Atlas during a time when it knew and approved of Intruder's negotiation and execution of an agreement with Ames which did not specifically include an obligation to label rakes sold by Ames with the Billado patent number.

3.      Intruder additionally brings cross-claims against Ames for contractual and common law indemnification in the event that Intruder is found liable in any way to Atlas for Atlas's breach of its agreement with Billado. Intruder's cross-claims against Billado are for breach of his agreement with Atlas, as Intruder was a third-party beneficiary of that agreement, as well as claims for intentional interference with contractual and business relations and violation of M.G.L. c. 93A for Billado's improper motive in seeking on two occasions to terminate without cause the agreement between Billado and Atlas and thus deprive Atlas and its sublicense (Intruder) of the royalties for the sale of the rake. In effect, Billado sought by improper motive to "cut" Atlas and Intruder out of the royalty stream so that he could deal directly with Ames, the manufacturer and seller of the rake, thereby reaping more profit for himself.

<u>**Parties**</u>

4.      Intruder is a Wisconsin corporation with a principal place of business at 230 W. Coleman Street, Rice Lake, Wisconsin.

5.      On information and belief, plaintiff and counterclaim defendant Atlas is a Massachusetts limited liability company with a principal place of business at 87 Terrace hall Avenue, Burlington, Massachusetts.

6.      On information and belief, defendant and cross-claim defendant Ames is a

-13-

Delaware corporation with a principal place of business at 465 Railroad Avenue, Camp Hill, Pennsylvania.

7.     On information and belief, defendant and cross-claim defendant Billado is a natural person whose principal residence is 249 Islington Street, Apt. #4, Portsmouth, New Hampshire.

### Jurisdiction and Venue

8.     Jurisdiction of these counterclaims and cross-claims is based on the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332(a).  The matter in controversy herein, exclusive of interest and costs, exceeds the sum of seventy five thousand dollars ($75,000).

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)-(c).

### Facts

**A.     The Billado-Atlas Agreement**

10.     On November 27, 1999, Billado and Atlas entered into a License Agreement (the "Billado-Atlas Agreement") whereby Billado, the developer of a rake identified as the "Waverake," licensed certain rights to Atlas, including an exclusive license to "make, use and sell the rake in all countries throughout the world except those where sale of the [rake] is prohibited by the laws of the United States Government."

11.     The Billado-Atlas Agreement further provided, among other things, that it would "extend in each country for the duration of the patent registration in such country" and that Atlas could sublicense its rights under the Billado-Atlas Agreement without the express written consent of Billado.

12.     Atlas further agreed under the Billado-Atlas Agreement to "mark all [rakes] sold or otherwise disposed of by it . . . with the phrase `U.S. Patent No.' or `U.S. Patents' (or with the appropriate patent designations in the foreign countries where the [rakes] are sold) as well as the

number or numbers of the issued [rakes] applicable thereto, and until said patents are issues [sic] with the phrase "'Patent Pending.'"

13.    Disputes under the Billado-Atlas Agreement that could not be resolved by the parties' agreement would be "settled under the Rules of Conciliation and Arbitration of the American Arbitration Association by a single arbitrator, knowledgeable in commercial law practices, appointed in accordance with such Rules," and the arbitration would be in Boston, Massachusetts.

**B.    The Atlas-Intruder Agreement and Addendum Thereto**

14.    On March 1, 2001, Atlas and Intruder entered into a Services License Agreement (the "Atlas-Intruder Agreement") whereby Atlas stated that it was the "holder of all the rights, title and interest that are necessary for the grant of the license provided in this Agreement," and accordingly granted to Intruder "a worldwide license to manufacture, market and distribute the Lawn Rake during the term of this Agreement, which license shall be exclusive (subject to the rights of Atlas hereunder, if any)."  The Atlas-Intruder Agreement was permissible under the Billado-Atlas Agreement, notice of which was provided to Billado by Atlas.

15.    The Atlas-Intruder Agreement did not require labeling of the rakes similar to that included in the Billado-Atlas Agreement, and it provided only that

> [t]he Lawn Rake and all services that are marketed, sold or utilized in any manner within the license granted hereunder will bear a proprietary rights notice, in form and substance satisfactory to Atlas, not to be unreasonably withheld, which shall be sufficient in Atlas' judgment to protect its rights and interest in the rights granted by Atlas to [Intruder] pursuant hereto. [Intruder] further agrees to give proper notice of trademarks, patents or other copyrights, where applicable, in connection with the use of any rights hereunder.

16.    The Atlas-Intruder Agreement further granted Intruder the authority to "grant any sublicense under this Agreement with express prior written consent of Atlas, provided that

[Intruder] is then meeting and continues to meet the minimum sales or payment requirements set forth in this agreement."

17.     The Atlas-Intruder Agreement further provided for indemnity. Atlas agreed to "indemnify, defend and hold harmless" Intruder "from and against all liabilities or losses, including without limitation, reasonable attorneys' fees, arising out of any claims, lawsuits or judgments, . . . arising out of any claims that the United States Patent for the Lawn Rake infringes upon the patent rights of any third party."

18.     In an Addendum to the Atlas-Intruder Agreement, Atlas and Intruder agreed that Intruder was Atlas's sublicense, as permitted by the Billado-Atlas Agreement, and that the Atlas Intruder Agreement was "not an assignment of Atlas' rights under the [Billado-Atlas Agreement] or an assignment of the [Billado-Atlas Agreement]" to Intruder.

**C.     Intruder's 2002 Agreement with Ames, Approved by Atlas**

19.     On February 7, 2002, Intruder and Ames entered a Clog-Free Rake Agreement (the "Intruder-Ames 2002 Agreement") whereby Ames was given "the right to produce and sell this product [the rake] from the date of the agreement through 12/31/02 in the United States, Canada and Europe." The purpose of the Intruder-Ames 2002 Agreement was to test placement of the rake by Ames in the retail outlets of Wal-Mart Stores, Inc. ("Wal-Mart") for a roughly one-year period.

20.     The Intruder-Ames 2002 Agreement further provided that Ames would "have the right to change colors, trade name and other merchandising related characteristics of the product [rake] sold under the [Ames] brand." Ames further agreed to "purchase the existing mold [for manufacture of the rake] for $50,000" if Ames pursued an agreement with Intruder beyond December 31, 2002, and further that Ames would be responsible for any damage to the mold tooling beyond normal wear and tear.

-16-

21.     In a February 21, 2002, Amendment to the Atlas-Intruder Agreement, Atlas and

Intruder acknowledged and approved the Intruder-Ames 2002 Agreement, and further agreed

that

> [t]he terms and conditions of the contract between Intruder and Atlas
> dated March 1, 2001 [the Atlas-Intruder Agreement] will change to
> coincide with the terms, conditions and quantities of the contract between
> Intruder and Ames [the Intruder-Ames 2002 Agreement], except as
> expressly set forth below, specifically with respect to the number of rakes.
> Enclosed is a copy of the Agreement between Intruder and Ames.

22.     In approving the Intruder-Ames 2002 Agreement, Atlas specifically

acknowledged that Ames, as the sublicensee to Intruder, would have no duties to label the rakes

in any specific manner, including in the manner required of Atlas under its agreement with

Billado.  Thereafter, Ames commenced manufacture and distribution of the rake to Wal-Mart

using its own packaging design which did not include reference to the Billado patent number,

and the rakes began appearing in Wal-Mart stores throughout the country.

**D.     Billado Seeks Labeling for the Rake, and Intruder Assists Atlas in
        Complying with Atlas's Contractual Obligations to Billado**

23.     In late August 2002, Atlas informed Intruder that Billado had informed Atlas that

he had seen a rake being distributed in a Wal-Mart store in New Hampshire and further noticed

that there was no patent number on the label of the rake.  Atlas asked Intruder to discuss this with

Ames and to place the patent number on the rakes.  Ames agreed to do so.

24.     Though under no obligation to place the patent number on the rakes, Intruder

contacted Ames in late August 2002 and asked that the patent number be placed on the rake

label.

25.     On September 5, 2002, David Nelson, the General Manager of Intruder, informed

Atlas by letter that Intruder had contacted Ames on August 27, 2002, "requesting that the patent

number of the rake be put on the rake or the packaging.  I explained that the patent number was

on our packaging.  He [Bill Grambo of Ames] would take care of the oversight and call me with

how it will be corrected."

26.    Ames prepared a label for the rake which displayed the patent number, as Atlas

had requested through Intruder.  Ames forwarded a proof of the label to Intruder, who forwarded

it by email to Walter Brauer at Atlas.

27.    In a letter dated October 1, 2002, to Mr. Brauer at Atlas, Mr. Nelson of Intruder

stated as follows:

> Today I contacted Jen Allison of Ames True Temper, with regards to their
> quantity of rakes shipped without the patent number.  She stated Ames has
> shipped approximately 90,000 rakes.  Ames has approximately 11,000
> rakes in the warehouse ready to ship.  They have ordered new labels with
> the patent number on them.
>
> Jen said Ames does not worry about the rakes that have no patent number
> indicated.  The patent process allows for this and will prevent anyone from
> making a copy.

28.    Intruder did not receive any response to this letter and assumed the matter was

concluded to the satisfaction of all parties.

**E.    Atlas Hides from Intruder the Fact That Billado Commences Litigation**

29.    Unknown to Intruder, however, was that Billado continued his dispute with Atlas

concerning the alleged failure to place the patent number on the rakes.  On October 9, 2002,

counsel for Billado informed counsel for Atlas that it was terminating Atlas's license under

section 7.2 of the Billado-Atlas Agreement for Atlas's failure to mark the rakes as required under

section 12.1 thereof.  Atlas did not inform Intruder of the termination.

30.    In a letter dated October 16, 2002, again unknown to Intruder, Atlas disputed

Billado's charges, stating among other things that Billado had not been harmed by the omission

of the patent number on the rake label, that such omission did not constitute a "substantial

breach" under the Billado-Ames Agreement that might allow for termination, and that, in any

-18-

event, Atlas had taken all reasonable steps require to cure any noncompliance with the Billado-

Atlas Agreement. Pursuant to the Billado-Atlas Agreement, by letter dated October 31, 2002,

Billado demanded arbitration. Atlas did not contemporaneously inform Intruder of the

commencement of arbitration.

### F.    Intruder's 2003 Agreement with Ames, Approved by Atlas

31.    On April 21, 2003, Intruder and Ames entered into a License Agreement (the

"Intruder-Ames 2003 Agreement") pursuant to which Intruder granted Ames an "exclusive

license (with no right to sublicense), to manufacture, offer for sale, sell, use and import [the rake]

throughout the United States and Canada." The initial "Term" of the Intruder-Ames 2003

Agreement commenced on the effective date thereof and would expire three (3) years thereafter,

unless terminated sooner as provided in the agreement itself.

32.    The Intruder-Ames 2003 Agreement provided, among other things, for

indemnification to Intruder and other parties:

> [Ames] agrees to defend, at its sole cost and expense and to indemnify and
> hold [Intruder, Atlas and Billado], harmless from and against all loss,
> costs, expenses (including legal fees), damages and liabilities, however
> caused resulting directly or indirectly from the conduct of [Ames's]
> business, including but not limiting [sic] to the manufacture, distribution,
> and sale of the [rake]. . . . [Ames] shall maintain in full force and effect
> during the Term of this Agreement, product liability insurance consistent
> with industry standards, in such form, in such amounts, which [sic] such
> coverage's and with such company(ies) as [Ames] shall deem necessary in
> [Ames's] reasonable opinion so as to adequately protect [Ames and
> Intruder, Atlas and Billado]. All such coverage(s) shall name [Intruder,
> Ames and Billado] . . . as additional insured and shall be noncancelable
> without first providing [Intruder] with at least SIXTY (60) days prior
> written notice.

33.    Intruder signed the Intruder-Ames 2003 Agreement on March 28, 2003. Atlas

was at all relevant times aware that Intruder was negotiating the Intruder-Ames 2003 Agreement

in early 2003, but did not disclose to Intruder until after that agreement was executed that Billado

had terminated his agreement with Atlas and that arbitration proceedings had commenced.

34.     In an Amendment to the Atlas-Intruder Agreement signed by Intruder on April

22, 2003, and by Atlas on April 24, 2003, Atlas agreed "to the terms and conditions set forth in

the contract between Ames True Temper and Intruder, Inc., dated March 28, 2003" – the

Intruder-Ames 2003 Agreement – and further provided for additional changes to the Atlas-

Intruder Agreement.

### G.     Atlas Defends its Actions in Suit Against Billado

35.     It was only after this Amendment that Atlas informed Intruder that Billado was

taking legal action against Atlas due to the issue concerning the placement of the patent number

on the rakes.  Atlas's counsel assured Intruder that there was no merit to Billado's claim and

sought Intruder's assistance in defending Billado's claim.

36.     The arbitration hearing between Billado and Atlas began, on information and

belief, in July 2003.  Atlas defended the arbitration based on the fact that Billado had not been

harmed by the omission of the patent number on the rake label, that such omission did not

constitute a "substantial breach" under the Billado-Ames Agreement that might allow for

termination, and that, in any event, Atlas had taken all reasonable steps require to cure any

noncompliance with the Billado-Atlas Agreement.

37.     Atlas also brought counterclaims against Billado, alleging that his termination of

the contract, for the purpose of dealing directly with Ames and earning more profits, constituted

an unfair and deceptive practice in violation of M.G.L. c. 93A and breached the implied

covenant of good faith and fair dealing inherent in the Billado-Atlas Agreement.

38.     On or about August 21, 2003, an arbitrator ruled in favor of Billado and

determined that "[t]he patent license agreement between [Billado and Atlas was] hereby

terminated as requested by [Billado]" due to Atlas's failure to mark some 90,000 rakes with

-20-

notice of Billado's patent.

39.    On September 18, 2003, Intruder paid Atlas $48,150, which was payment for the rake mold (already provided by Intruder to Ames) with a deduction for travel expenses incurred when Mr. Nelson traveled to Boston for the Billado-Atlas arbitration hearing that summer.  This was despite the fact that Ames had been using the mold for some time but had not yet paid Intruder.  Ames did not pay Intruder for the rake mold until December 5, 2003, at which time it paid Intruder by check for $50,000 plus $3,900 in interest.  Intruder was only able to obtain this payment after many attempts with Ames.

**H.    Atlas Makes Demand on Intruder; Intruder and Ames Amend Royalty Payments**

40.    On October 6, 2003, Atlas's attorneys sent Intruder a letter seeking damages and claiming that Intruder had breached the Atlas-Intruder Agreement, owed Atlas indemnification and owned certain intellectual property concerning the rake.  This was the first time Atlas had ever provided notice to Intruder of such claims.

41.    At some time after the August 2003 decision by the arbitrator, Billado and Ames began negotiating directly for an agreement whereby Ames would continue to manufacture and sell the rake and provide royalties and other benefits directly to Billado.  Such an agreement was, on information and belief, ultimately consummated, and Billado and Ames both thereby enjoyed an increase in royalties and profits beyond what they had received prior to the August 2003 arbitration award which terminated Billado's obligations to Atlas.

42.    Recognizing its continued obligations to Intruder, Ames informed Intruder that it would "have an agreement for 2 years for the Clog Free Rake with just [Intruder] separate from the inventor [Billado].  I [Ames] want to continue the relationship with [Intruder] and reward some of the efforts with the new royalty agreement."

43.     Negotiations on the promised new royalties continued for many months.  A revised License Agreement ("Intruder-Ames 2004 Agreement") was ultimately presented by Ames to Intruder in March 2004, and was to be effective as of January 1, 2004.  In preliminary discussions prior to receiving the Intruder-Ames 2004 Agreement, Ames initially stated that it would not pay any royalties owed for 2003, stating that the Intruder-Ames Agreement would begin in Ames's second quarter of fiscal year 2004.

44.     Intruder pressed the royalty issue with Ames, as Intruder's agreement with Ames was still in effect well into Ames's fourth quarter for 2003, and Intruder demanded payment of those royalties.  Upon finalization of the Intruder-Ames 2004 Agreement, Ames agreed to pay the 2003 remaining royalties under the Intruder-Ames 2003 Agreement.

## Count I
### (Breach of Contact v. Atlas Garden)

45.     Intruder repeats and realleges its preceding allegations as if fully set forth herein.

46.     Atlas breached the material terms of its contract with Intruder by terminating the contract without cause.

47.     As a result of this breach and termination, Intruder has suffered monetary damages in an amount to be determined at trial.

## Count II
### (Breach of Implied Covenant of Good Faith and Fair Dealing v. Atlas Garden)

48.     Intruder repeats and realleges its preceding allegations as if fully set forth herein.

49.     As a matter of law, the contract between Atlas and Intruder contains and incorporates an implied covenant on the part of each party to act in good faith and to deal fairly with each other.

50.     By its actions, Atlas has breached the implied duty of good faith and fair dealing by, among other things, failing to notify Intruder of the commencement of arbitration proceedings against it by Billado.

51.     As a result of Atlas's breach of the implied covenants of good faith and fair dealing, Intruder was deprived of its right to notice of the arbitration proceeding and participation in the defense of Intruder in such proceeding.

## Count III
### (Violation of M.G.L. c. 93A v. Atlas Garden)

52.     Intruder repeats and realleges its preceding allegations as if fully set forth herein.

53.     At all times relevant, Atlas was engaged in trade and business within the Commonwealth of Massachusetts.

54.     Atlas's (1) failure to implement the labeling requirements of its agreement with Billado with respect to Intruder's licensing agreement; (2) decision to hide from Intruder the fact that Billado commenced litigation; and (3) depriving Intruder of its right to participate in the defense of the arbitration proceeding, individually and jointly constitute unfair and deceptive practices in violation of G.L. c. 93A.

55.     As a result of Atlas's violations of G.L. c. 93A, Intruder suffered and continues to suffer damages.

## Count IV
### (Contribution v. Atlas Garden)

56.     Intruder repeats and realleges its preceding allegations as if fully set forth herein.

57.     To the extent that Intruder is obligated to indemnify Atlas under the parties' contract, Intruder is entitled to contribution from Atlas as a result of Atlas's fault.

58.     The termination of the contract between Atlas and Intruder is directly attributable to Atlas's breach of its contract with Billado and has resulted in substantial costs and damages to

-23-

Intruder including, but not limited to, lost profits and attorneys' fees and related costs.

## Count V
### (Intentional Interference with Contractual and Business Relations v. Atlas Garden)

59.     Intruder repeats and realleges its preceding allegations as if fully set forth herein.

60.     Intruder had agreements with Ames for the licensing and sale of the rake.

61.     Atlas Garden knew of the contractual and business relationships between Intruder and Ames.

62.     By, among other things, failing to comply with the terms of its own agreement with Billado and by hiding from Intruder the fact that Billado was commencing and proceeding with litigation against Atlas Garden concerning the licensing of the rake, Atlas Garden interfered with Intruder's contractual and business relationship with Ames, and Atlas Garden did so with improper motive and using improper means.

63.     As a result of Atlas Garden's tortious interference with Intruder's contractual and business relationships, Intruder has suffered monetary damages in an amount to be proven at trial.

## Count VI
### (Contractual and Common Law Indemnification v. Ames True Temper)

64.     Intruder repeats and realleges its preceding allegations as if fully set forth herein.

65.     Pursuant to the terms of the contract, Ames agreed to indemnify and hold Intruder harmless from and against any and all loss, costs and expenses incurred by Intruder as a direct or indirect result of Ames's conduct.  Ames also owes a common law duty to indemnify Intruder for any and all damages Intruder incurs as a result of Ames's conduct.

66.     As a result of Ames's conduct, Intruder has incurred, and continues to incur, substantial costs and damages including but not limited to, lost profits and attorneys' fees and related costs.

### Count VII
### (Contribution v. Ames True Temper)

67.     Intruder repeats and realleges its preceding allegations as if fully set forth herein.

68.     To the extent that Intruder is obligated to pay any damages, judgments or other amounts arising from the licensing, sale, manufacture or business concerning the rake – including without limitation that the actions of Intruder and/or others has violated any trademark or other intellectual property rights of  Atlas Garden – Intruder is entitled to contribution from Ames True Temper.

### Count VIII
### (Violation of M.G.L. c. 93A v. Billado)

69.     Intruder repeats and realleges its preceding allegations as if fully set forth herein.

70.     At all times relevant, Billado was engaged in trade or business within the Commonwealth of Massachusetts.

71.     Billado's attempt to terminate the Billado-Atlas Agreement without cause, in an effort to earn more profits by dealing directly with Ames and "cutting" Atlas and Intruder out, constitutes unfair and deceptive practices in violation of G.L. c. 93A.

72.     As a result of Billado's violations of G.L. c. 93A, Intruder suffered and continues to suffer damages.

### Count IX
### (Intentional Interference with Contractual and Business Relations v. Billado)

73.     Intruder repeats and realleges its preceding allegations as if fully set forth herein.

74.     Intruder had a contract with both Atlas and Ames for the licensing and sale of the rake.

75.     Billado knew of the contractual relationships between Atlas and Intruder and the sublicensing agreement between Intruder and Ames.

-25-

76.     By terminating without cause the Billado-Atlas Agreement, Billado interfered with these contractual relationships, with improper motive and using improper means.

77.     As a result of Billado's tortious interference with Intruder's contractual relationships, Intruder has suffered monetary damages in an amount to be proven at trial.

## Count X
### (Contribution v. Billado)

78.     Intruder repeats and realleges its preceding allegations as if fully set forth herein.

79.     To the extent that Intruder is obligated to pay any damages, judgments or other amounts arising from the licensing, sale, manufacture or business concerning the rake – including without limitation that the actions of Intruder and/or others has violated any trademark or other intellectual property rights of  Atlas Garden – Intruder is entitled to contribution from Billado.

## Count XI
### (Breach of Contract as Third Party Beneficiary v. Billado)

80.     Intruder repeats and realleges its preceding allegations as if fully set forth herein.

81.     Billado has unreasonably and in bad faith terminated its contract with Atlas.

82.     As a result of Billado's conduct, Intruder, as a third party beneficiary to the Billado-Atlas Agreement, has suffered damages in an amount to be determined at trial.

## Count XII
### (Breach of the Implied Covenant of Good Faith and Fair Dealing as Third Party Beneficiary v. Billado)

83.     Intruder repeats and realleges its preceding allegations as if fully set forth herein.

84.     As a matter of law, the contract between Billado and Atlas contains and incorporates an implied covenant on the part of each party to act in good faith and to deal fairly with each other.

-26-

85.    By his actions, Billado has breached the implied duty of good faith and fair dealing by, among other things, attempting to terminate the agreement without cause for the sole purpose of earning more profit.

86.    As a result of Billado's breach of the implied covenants of good faith and fair dealing, Intruder, as a third party beneficiary to the Billado-Atlas Agreement, was deprived of its right to fulfill its contractual obligations with Atlas and Ames.

## DEMAND FOR A TRIAL BY JURY

Intruder, Inc., by and through its attorneys, hereby demands a trial by jury on all claims, counterclaims and cross-claims so triable.

WHEREFORE, defendant Intruder, Inc. respectfully requests that this Court enter judgment in favor of Intruder on all of the foregoing counterclaims and crossclaims in an amount to be determined at trial, and  that this Court provide Intruder such other and further relief as this Court deems proper.

Respectfully submitted,

INTRUDER, INC.,
By its attorneys,

/s/Edward W. Little, Jr.
Daniel J. Kelly, BBO # 553926
dkelly@ghlaw.com
Edward W. Little Jr., BBO # 628985
elittle@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000

Dated:  _____, 2006

B0453935v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day a true copy of the foregoing *Amended Answer of Defendant Intruder, Inc. to Complaint and Jury Demand, Counterclaims and Crossclaims* was served upon the attorneys of record for each party by first class mail, postage prepaid, and where possible by electronic means via the CM/ECF filing and notification system:

David A. Brown, Esq.                     Mark A. Willard, Esq.
Katy E. Koski, Esq.                      Anthony M. Moccia, Esq.
Sherin and Lodgen LLP                    Eckert Seamans Cherin & Melllot, LLC
101 Federal Street                       One International Place, 18th Floor
Boston, MA 02110                         Boston, MA 02110

Danielle L. Pacik, Esq.
Steve E. Grill, Esq.
Devine, Millimet & Branch
111 Amherst Street
P.O. Box 109
Manchester, NH 03105


By:    /s/Edward W. Little, Jr.

Date:    _____, 2006

Exhibit B

## STANDSTILL AGREEMENT

This Standstill Agreement ("Agreement") is made and entered into as of the 17[h] day of January, 2006 by and among:

Intruder, Inc., a corporation organized and existing under the laws of the State of Wisconsin ("Intruder"),

Ames True Temper, Inc., a corporation organized and existing under the laws of the State of Delaware ("Ames TT"), and

Harry S. Billado, an individual citizen of the State of New Hampshire ("Billado").

WITNESSETH

WHEREAS, Intruder, Ames TT and Billado are named as defendants in an action commenced against them by Atlas Garden Supply, LLC ("Atlas") pending in the United States District Court for the District of Massachusetts at Civil Action No. 05-11122-JLT (the "Action").

WHEREAS, Intruder, Ames TT and Billado each deny all liability in connection with the various claims asserted by Atlas in the Action;

WHEREAS, Intruder, Ames TT and Billado, as codefendants in the Action, each believe that each may have a meritorious claim against one or more of the others, which claims are properly assertable as claims or cross-claims arising out of the transactions or occurrences that are the subject matter of the Action, or which relate to certain property that is subject matter of the Action, which cross-claims may include claims that the codefendant against whom it is asserted is or may be liable to the cross-claimant codefendant for all or part of claims asserted by Atlas in the Action;

WHEREAS, prior to the date of this Agreement, Intruder, Ames TT and Billado and their respective representatives have engaged in discussions in an attempt to amicably resolve their differences and the claims asserted against them in the Action by Atlas; and

WHEREAS, Intruder, Ames TT and Billado desire to enter into this Agreement to facilitate the continuation of discussions among them and with Atlas in efforts to amicably resolve their differences and to achieve an amicable resolution of the claims asserted against them by Atlas in Action.

NOW, THEREFORE, in consideration of the foregoing, the mutual benefits inuring to each of the parties hereto and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged by each of the parties hereto, and intending to be legally bound hereby, Intruder, Ames TT and Billado agree as follows:

1. <u>Standstill Period</u>:  The parties hereto agree that there shall be a "Standstill Period" beginning on the date of this Agreement and, unless extended by written agreement of all parties hereto, ending on the earlier to occur of (a) the date which is sixty (60) days following the date of this Agreement, or (b) ten (10) days following the first date upon which any party to this Agreement notifies any other party to this Agreement that such party has elected to terminate this Agreement.

2. <u>No Cross-Claims During the Standstill Period</u>:  Each party to this Agreement agrees that, during the Standstill Period, no party hereto will assert any claim or cross-claim against any other party hereto in the Action.

2

3. <u>Effect of this Agreement:</u>  This Agreement shall have absolutely no prejudicial effect upon the positions of the parties to this Agreement in the Action and does not constitute an admission or waiver by any party hereto of any right or cause of action and each party hereto expressly reserves all of his or its rights, remedies and defenses in law or in equity including the right to assert claims or cross-claims against any other party hereto.  No party hereto will raise or make any claim or assert any defense in the Action that such party was prejudiced or that any other party to this Agreement waived, released, abandoned, forgave, forgot, discharged or otherwise lost or relinquished any interest or right or cause of action or defense by reason of any other party's delay or failure to assert or pursue prior to or during the Standstill Period, any such right, claim, cause of action or defense that may presently be available to such party.  Any and all applicable statutes of limitation, statutes of repose, the doctrines of laches, waiver, estoppel or any other time limitation or doctrine or rule that is premised in whole or in part upon delay in filing, notifying or taking any action preparatory or incidental to the prosecution of any claim, cause of action, cross-claim, demand or other legal action or proceeding between the parties to this Agreement ("Limitations Defenses") shall be deemed waived and tolled until expiration of the Standstill Period and any period of time during the Standstill Period shall not be used in calculating any Limitations Defenses which may be applicable thereto. Without limiting any of the foregoing, each of the parties hereto expressly agrees to consent to any motion by either of the others seeking leave to amend any answer or other pleading to assert claims or cross-claims on the basis of timeliness, provided that this further agreement applies only to motions for

3

leave to amend which are brought forward promptly following the termination of this Standstill Agreement.

4. <u>Governing Law:</u>  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

5. <u>Successors and Assigns:</u>  This Agreement shall be binding upon and inure to the benefit to the parties hereto, their heirs, personal representatives, successors and assigns.

6. <u>Representation of Authority:</u>  Each party hereto represents and warrants to each other party hereto that (a) counsel for such party is duly authorized to execute and deliver this Agreement on behalf of such party, and (b) this Agreement is a valid legal and binding obligation of such party in accordance with its terms.

7. <u>Notices:</u>  Any notice from any party hereto to any other party hereto must be in writing and either sent by e-mail, mail, a recognized overnight delivery service, or must be hand delivered at the address of counsel for all parties as set forth below:

Intruder, Inc.
c/o Edward Little
Gadsby Hannah, LLP
225 Franklin Street
Boston, MA 02110
<u>elittle@ghlaw.com</u>

and

David G. Anderson
Ruder Ware
402 Graham Avenue
P.O. Box 187
Eau Claire, WI  54702-0187

4

Ames True Temper, Inc.
c/o Mark A. Willard
Eckert Seamans Cherin & Mellott, LLC
U.S. Steel Building
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
mwillard@eckertseamans.com

Harry S. Billado
c/o Steven E. Grill
Devine Millimet
111 Amherst Street
Manchest, NH 03105
sgrill@devinemillimet.com

WITNESSETH, the due execution and delivery of this Standstill Agreement as of the day and year first above written.

Intruder, Inc.                                          Ames True Temper, Inc.


_____                    _____
By:  Edward Little, Esq.                           By:  Mark A. Willard, Esq.


_____
By:  David Anderson, Esq.


Harry S. Billado


_____
By:  Steven E. Grill, Esq.

5

Ames True Temper, Inc.
c/o Mark A. Willard
Eckert Seamans Cherin & Mellott, LLC
U.S. Steel Building
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
mwillard@eckertseamans.com

Harry S. Billado
c/o Steven E. Grill
Devine Millimet
111 Amherst Street
Manchest, NH 03105
sgrill@devinemillimet.com

WITNESSETH, the due execution and delivery of this Standstill Agreement as of the day and year first above written.

Intruder, Inc.                                      Ames True Temper, Inc.


_____                        _____
By:  Edward Little, Esq.                            By:  Mark A. Willard, Esq.


_____
By:  David Anderson, Esq.


Harry S. Billado


_____
By:  Steven E. Grill, Esq.

5